389 A.2d 594

TENREED CORPORATION

v.

PHILADELPHIA FOLDING BOX COMPANY, Appellant,

and

Charles Benjamin, Incorporated, Garnishee,

and

Continental Bank, Garnishee.

Superior Court of Pennsylvania.

Argued March 22, 1978.

Decided July 12, 1978.

Edwin L. Scherlis, Philadelphia, for appellant.

Miles Warner, Philadelphia, for appellee, Tenreed Corp.

No appearance entered nor brief submitted for appellees, Charles Benjamin, Inc., and Continental Bank.

Before JACOBS, President Judge, and HOFFMAN, CERCONE, PRICE, VAN der VOORT and HESTER, JJ.

JACOBS, President Judge:

This is an appeal by Philadelphia Folding Box Company from an order of the lower court denying its petition to open a confessed judgment. For the reasons developed below, we conclude that the lower court should have granted the petition to open and, therefore, reverse.

The essential facts of the case were set forth in a prior decision by this Court;[1] only a brief resume of those facts is necessary for purposes of this appeal. It will be remembered that the original lease, effective December 1, 1963, contained a provision for the continuation of that lease on the same terms and conditions for an additional year if neither party gave ninety days written notice of a contrary intent.[2] On November 28, 1973, at the end of the ten year period initially agreed upon, the parties entered into a written agreement extending the term of the lease for an additional year, until November 30, 1974. With the exception of a few minor amendments to the original lease, all terms and conditions of that lease were to continue in effect.[3] Of particular importance here is that the ninety day notice provision, contained in Paragraph 24 of the 1963 Lease, was also to remain in effect during the one year

1. In *Tenreed Corp. v. Philadelphia Folding Box Company,* 246 Pa.Super. 436, 371 A.2d 916 (1977), we reversed an order of the lower court striking off this same judgment and remanded the case for further proceedings.

2. Paragraph 24 of the 1963 Lease provided:
   "It is hereby mutually agreed that either party may determine this Lease at the end of the second term by giving to the other party written notice thereof at least ninety (90) days prior thereto, but in default of such notice this lease shall continue upon the same terms and conditions in force immediately prior to the expiration of the term hereof as are herein contained for a further period of one (1) year and so on from year to year unless or until terminated by either party hereto, giving the other ninety (90) days written notice for removal previous to expiration of the then current term; . . ."

   Printed Record at 15a.

3. Paragraph 7 of the extension agreement stated:
   "Except as above specified, all other terms, covenants and conditions of said lease shall remain in full force and effect."

   Printed Record at 28a.

extension.[4]  The parties executed a second extension agreement in December, 1974.  This writing again extended the term of the lease for another year, until November 30, 1975, with all terms and conditions of the original lease, as amended by the 1973 extension agreement, to continue in effect.[5]

The following sequence of events set the stage for *Tenreed I:*

"Early in November, 1975, Philadelphia Folding Box, under the impression that the lease would expire on November 30, 1975, without the ninety days written notice provided in the earlier agreements, began to remove equipment from the premises in anticipation of occupying new premises.  Tenreed Corporation, asserting that failure of the lessee to give notice worked to extend the term of the lease an additional year until November 30, 1976, confessed judgment on November 19, 1975, for the full amount of that additional year's rent, on the basis that lessee had violated the covenant not to abandon and thus accelerated the rent for the remaining term of the lease.

Appellee promptly petitioned to either strike or open the confessed judgment.  The lower court did strike the

4. Paragraph 4 of the agreement referred to the ninety day notice provision as follows:
   "Clause 24, first paragraph, line one, the words 'at the end of the second term' are deleted and the words 'at the end of the extended term, namely November 30, 1974,' are inserted in their place."
   Printed Record at 28a.

5. The text of the extension agreement of December, 1974, is as follows:
   "It is hereby mutually agreed that the Agreement of Lease made on November 20, 1963, as amended by letter dated November 28, 1973, by and between the parties hereto for the captioned premises is hereby further amended as follows:
   "1.  Clause 3, the term is extended for a period of ONE (1) YEAR commencing December 1, 1974 and expiring November 30, 1975.
   "2.  Clause 4, the minimum annual rental payable during the extended term shall be FORTY–EIGHT THOUSAND DOLLARS ($48,000.00);  $4,000.00 monthly.
   "3.  Except as above specified, all other terms, covenants and conditions of the said lease shall remain in full force and effect."
   Printed Record at 29a.

judgment,[6] thus the petition to open was not considered. Tenreed Corporation appealed from the order striking the judgment." 246 Pa.Super. at 440, 371 A.2d at 918. (Footnote added.)

In *Tenreed I,* we held that if in fact the lease had been extended for an additional year, *i. e.,* December 1, 1975, to November 30, 1976, then that additional year was part of the "unexpired term of the lease." The lower court's basis for striking judgment thus declared to have been improper, we reversed and remanded the case for further proceedings. We specifically avoided a decision at that time on the question of whether or not the lease had actually been extended for an additional year.[7] Rather, we instructed the lower court to hear arguments on that question, arguments that the lower court had not considered previously because of its disposition of the petition to strike. This appeal followed Judge SNYDER's order on remand dated July 12, 1977, denying appellant's petition and thereby allowing the confessed judgment to stand.

It is now well-established that a petition to open a judgment by confession is an appeal to the sound discretion of the lower court. *Foerst v. Rotkis,* 244 Pa.Super. 447, 368 A.2d 805 (1976); *Christie v. Open Pantry Food Marts, Inc.,* 237 Pa.Super. 243, 352 A.2d 165 (1975); *Wolgin v. Mickman,* 233 Pa.Super. 218, 335 A.2d 824 (1975). In order for such a petition to prevail, the judgment debtor must act promptly and produce evidence in support of a meritorious defense. *Wenger v. Ziegler,* 424 Pa. 268, 226 A.2d 653 (1967); *Walnut-Juniper Co. v. McKee, Berger & Mansueto, Inc.,* 236 Pa.Super. 1, 344 A.2d 549 (1975); *Joseph A. Puleo & Sons, Inc. v. Rossi,* 234 Pa.Super. 612, 340 A.2d 557 (1975); *Ritchey v. Mars,* 227 Pa.Super. 33, 324 A.2d 513 (1974). There is no

6. The lower court based its decision to strike on a finding that while Tenreed Corporation was authorized to confess judgment for the unexpired term of the lease, it could not consider the additional year as part of that term.

7. Due to the procedural posture of the case, such a decision would clearly have been premature.

contention that appellant failed to act promptly in filing its petition; we acknowledged as much in *Tenreed I.* It is only necessary, therefore, for us to determine whether appellant advanced sufficient evidence of a meritorious defense to the confessed judgment.

Rule 2959(e), Pa.R.C.P., effective December 1, 1973, provides that a judgment by confession *shall* be opened if the judgment debtor produces evidence which, in a jury trial, would require submission of the issues to a jury. "Thus, a court can no longer weigh the evidence in support of the defense, but must only determine whether there is sufficient evidence to allow the issue to go to the jury [citation omitted]." *Wolgin v. Mickman,* supra, 233 Pa.Super. at 222, 335 A.2d at 826. As we stated in *Greenwood v. Kadoich,* 239 Pa.Super. 372, 376, 357 A.2d 604, 606 (1976):

> "Since the standard of sufficiency here is that employed on consideration of a directed verdict, the facts must be viewed in the light most favorable to appellant and we must accept as true all evidence and proper inferences therefrom supporting [its] defense . . . and must reject the adverse allegations of appellee."

Appellant alleged in its petition to strike and/or open judgment that the lease had not been extended for an additional year, *i. e.,* December 1, 1975, to November 30, 1976; rather, it was anticipated by the parties that the lease would automatically terminate on November 30, 1975, without the ninety days written notice provided for in the earlier agreements. If a jury accepted this allegation as true, then appellant would clearly have a complete and meritorious defense to the judgment. However, the court below apparently determined that appellant's case did not present the requisite jury issue, concluding that the lease had actually been extended for the year December 1, 1975, to November 30, 1976. Judge SNYDER stated his reasoning, in part, as follows:

> "The defendant's argument that the lease had *not* been extended for an additional year is set out in its several memoranda of law. The argument, in effect, goes as

follows: At the end of the ten year term of the lease, the parties entered into a writing which extended the lease term for an additional year. The writing stated, among other things, that the ninety day notice provision would remain in effect during the one year extension and that all other terms and conditions of the 1963 lease were to remain in effect.

"A year later, the parties entered into a second extension agreement, which referred to the 1963 lease, 'as amended' by the first extension agreement, and provided that the lease would be 'further amended' as follows: the lease term would be extended 'for a period of one year,' the rent would be raised, and that, '(e)xcept as above specified, all other terms, covenants and conditions of the said lease shall remain in full force and effect.'

"The defendant would have us conclude that the second extension agreement, which makes no mention of the ninety day notice provision, is 'totally independent' of the 1963 lease and the first extension agreement, which do make mention of the notice provision. See Defendant's Rebuttal Memorandum, numbered paragraphs 1 and 6. Since no mention was made of the notice provision, the second extension agreement 'provided for the natural termination of the lease at the conclusion of one year.' Id. at numbered paragraph 3. The defendant has arrived at this conclusion in spite of the provision in the second extension agreement which specifically states that, except that the lease term would be extended for an additional year at a different rent, 'all other terms, covenants and conditions of the said lease (would) remain in full force and effect.'

"Clearly, the defendant would have us read the second extension agreement to state that the lease term is extended 'for one year *only*.' See defendant's Supplemental Memorandum, page 2, emphasis added. But the second extension agreement does not state that the lease term is extended for one year only; it states that the lease term is extended for an additional year at a different rent and that, except for these two specifics, *all* the conditions,

covenants and terms of the 1963 lease, as amended by the first extension agreement, shall remain in full force and effect. The defendant would have us construe the intent of the parties by referring to one phrase in the agreement and ignoring the remainder. But the Pennsylvania Supreme Court has held explicitly that, '(i)n construing the terms of a lease, the intent of the parties is not to be determined merely by reference to a single word or phrase but by giving "every part of (the document) its fair and legitimate meaning".' *Boyd v. Shell Oil Company,* 454 Pa. 374, 311 A.2d 616, 618–19 (1973).

"If *every* part of the second extension agreement were to be given its fair and legitimate meaning, we could see specifically how it 'further amends' the 1963 lease and the first extension agreement. First, it specifically extends the lease term for an additional year. Second, it specifically raises the rent. Except for these two specifics, *all* the prior conditions, covenants and terms as amended remain in full force and effect."

█ Judge SNYDER may ultimately prove to have been correct. We, however, do not read the record before us with such certainty. The first extension agreement specifically amended Paragraph 24 of the Original Lease, so that either party could determine the lease "at the end of the extended term, namely November 30, 1974," by giving ninety days written notice. The second extension agreement made no mention of the notice provision, but extended the terms of the Original Lease, as amended in 1973, for another year. If the ninety days notice provision in fact was carried over for the extended year December 1, 1974, to November 30, 1975, then Paragraph 24 would still have had November 30, 1974 as the termination date of the lease. That clearly, however, would have been incorrect. We think this is evidence that the parties intended to have the lease terminate automatically on November 30, 1975. A jury might not be similarly persuaded, but that is not dispositive; to hold otherwise would emasculate Rule 2959(e). All that is important at this posture of the case is that appellant's evidence would be

sufficient to prevent a directed verdict against it and poses a question which justifies submission of the case to a jury. The lower court, therefore, should have granted appellant's petition to open the confessed judgment.

Order reversed.

PRICE, J., dissents.

SPAETH, J., did not participate in the consideration or decision of this case.