424 A.2d 891

PAWCO, INC.

v.

BERGMAN KNITTING MILLS, INC., Appellant.

Superior Court of Pennsylvania.

Argued June 13, 1980.

Filed Dec. 29, 1980.

Petition for Allowance of Appeal Denied April 20, 1981.

444

Tom P. Monteverde, Philadelphia, for appellant.

Marvin J. Levin, Philadelphia, for appellee.

Before CERCONE, President Judge, and PRICE, SPAETH, HESTER, CAVANAUGH, BROSKY and WICK-ERSHAM, JJ.

SPAETH, Judge:

This is a landlord-tenant case. The lower court refused to strike or open judgments confessed by the landlord for ejectment and monetary damages (the court reduced the latter judgment from $76,810.16 to $69,580.91). On the tenant's appeal, a panel of this court (VAN der VOORT,

WIEAND and LIPEZ, JJ.) affirmed the orders refusing to strike, but reversed the orders refusing to open the judgments. On the landlord's petition, we granted reargument before this court *en banc* as to whether the judgments should be opened.

The tenant is Bergman Knitting Mills, Inc. For a good many years, Bergman has conducted its knitwear manufacturing business on the leased premises, which are the top three floors of a seven floor building at 2102–2199 Lehigh Avenue in Philadelphia. The landlord is Pawco, Inc. It bought the building on Lehigh Avenue in September 1975, and Bergman's lease was assigned to it. On September 2, 1977, Pawco filed complaints confessing judgments against Bergman in ejectment and for monetary damages. The complaints alleged that Bergman had breached its lease in that it had failed to pay rent for June, July, August and September, 1977, and also various charges, assessed as additional rent, for electricity, water and sewer, and automatic sprinkler service. On September 21, 1977, Bergman filed its petitions to strike or open the judgments. Pawco answered the petitions and depositions were taken. Since the petitions to open were promptly filed, the only issue is whether they plead a meritorious defense. *Kardos v. Morris*, 470 Pa. 337, 368 A.2d 657 (1977); *Fidelity Bank v. Act of America, Inc.*, 258 Pa.Super. 261, 392 A.2d 784 (1978). The principal defense pleaded is as follows. Under the lease Pawco is required to supply heating oil to heat the premises and generate live steam to operate the equipment Bergman uses in its business. On May 23, 1977, Pawco wrote Bergman that "[i]t is impossible for our company to provide the cash flow necessary for us to buy fuel so that [you] can be provided steam twelve months of the year." (Supp. Record, 34b). The letter went on to state that "[i]t is our desire to amicably resolve this inability," and offered "a number of plans." (*Id.*) On June 3, Pawco wrote Bergman that "[a]t the present rate of consumption there is enough fuel in inventory to supply high pressure steam to you until Monday afternoon, June 6;" the letter also stated that "we will be

unable to acquire additional fuel oil;" and "we will not allow any credit against rent if you decide to provide your own oil." (Supp. Record, 36b) The parties were unable to come to an agreement, and on June 28, Bergman informed Pawco that henceforth it would pay its monthly rent and charges for electricity, less the amounts paid for fuel oil, into an escrow account in the name of its attorney. It did this for July and August, and, as mentioned above, on September 2, Pawco confessed judgments in ejectment and for monetary damages. It is Bergman's position that its promise to pay rent and Pawco's promise to supply heating oil were mutually dependent, and when Pawco breached its promise, Bergman was entitled to relief, including withholding rent.

The lower court held that this was not a meritorious defense, stating:

[Bergman's] unilateral action [in paying into an escrow account] was neither permitted by the lease agreement or sanctioned by the law applicable to commercial properties. It has long been recognized that covenants of a lease are independent of each other and therefore a breach by the lessor of one of the conditions does not excuse the obligation of the lessee to pay rent and other charges reserved as rent. *McDanel v. Mack Realty Company et al.*, 315 Pa. 174 [172 A. 97 (1934)]; *Roth v. Golden Slipper Restaurant & Catering, Inc.*, 167 Pa.Super. 558 [76 A.2d 475 (1950)]. Nothing but a surrender or release or an eviction can absolve a tenant from his obligation to pay rent as specified in the lease. *Gale, Ind., Inc. v. Bristol FM&A Co.*, 431 Pa. 464 [246 A.2d 391] (1968).

(Slip op. at 3)

The issue that we must decide is whether this is a correct statement of the law. For the reasons that follow, we are persuaded that it is not.

It may be granted that the law once was as stated by the lower court. Thus in *Roth v. Golden Slipper Restaurant & Catering, Inc., supra*, we said:

Covenants in leases are mutually independent unless in terms expressly conditional. "Non-performance of a covenant by one party to a lease or other conveyance of land, unless performance of the covenant is an express condition, does not excuse the other party from performing his covenants...." Restatement, Contracts, sec. 290.

167 Pa.Super. at 560–61, 76 A.2d at 476–477.

Despite this general principle, however, the Supreme Court early recognized that a tenant might be entitled to withhold rent because of the landlord's failure of performance. In *McDanel v. Mack Realty Co., supra,* the tenant claimed damages as a result of having been evicted for failure to pay rent. The Supreme Court defined the issue as being whether the landlord had "a right to make distress, the result of which was that [the tenant] was evicted from the premises." 315 Pa. at 177, 172 A. at 98. The tenant argued that the landlord had no right to make the distress, and that the eviction was therefore illegal, because the landlord had defaulted in its covenant to heat the premises. The Court examined this argument by putting itself in the tenant's position and asking itself, "What is my remedy for the [landlord's] violation of this covenant?" *Id.* The Court then proceeded to answer the question as follows:

The first answer to this [question] is this: Three remedies are available to a tenant where a landlord fails to perform a lease covenant: (1) Upon the landlord's failure of performance, the tenant can perform it at his own expense and deduct the cost of such performance from the amount of rent due and payable; or (2) the tenant can surrender the possession of the premises to relieve himself from any further payment of rent; or (3) he can retain possession of the premises and deduct from the rent the difference between the rental value of the premises as it would have been if the lease had been fully complied with by the landlord and its rental value in the condition it actually was [citations omitted].

315 Pa. at 177–78, 172 A. at 98.

Having thus recognized the tenant's right to withhold rent, however, the Court went on to give a "second answer" to the question it had asked itself, which was that on the record before it, the tenant had no such right, this being so because, as the lower court had found,

"[t]here could be no breach by the landlord of the covenant to heat until he was notified by the [tenant] of his failure to comply with this condition, and thereafter failed to properly heat the premises of the [tenant]. No notice was given to the [landlord] until November of 1930, and at that time the [tenant] himself was greatly in default so far as the rent was concerned, and thereafter he continued to be in default during the entire time he remained in possession of the leased premises.

315 Pa. at 179, 172 A. at 99.

The importance of the Supreme Court's decision in *McDanel*, as the law has developed, was its disposition of the issue before it by reference to principles, not of property law, but of contract law. Since *McDanel*, the Court has applied principles of contract law to cases involving both residential leases, *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968) (lessor of row house who contracted *by covenant in lease* to maintain premises held liable in tort for physical harm to lessee and others); *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974) (lease held *equivalent to a sale* of the premises for a term, thus making applicable the Consumer Protection Law), and a commercial lease, *Albert M. Greenfield & Co. v. Kolea*, 475 Pa. 351, 380 A.2d 758 (1977) (doctrine of *impossibility of performance* relieves tenant of lease obligations when fire destroys leased garage building). In *Greenfield* the Court stated the basis for its shift from principles of property law to principles of contract law:

In reaching a decision involving the landlord-tenant relationship, too often courts have relied on outdated common law property principles and presumptions and have refused to consider the factors necessary for an equitable and just conclusion.

The trial court's decision to bind the lessee to the lease was simply an application of an outdated common law presumption. That presumption developed in a society very different from ours today: one where the land was always more valuable than the building erected on it. Buildings are critical to the functioning of modern society. When the parties bargain for the use of a building, the soil beneath is generally of little consequence. Our laws should develop to reflect those changes.

475 Pa. at 356–57, 380 A.2d at 760.

Following this reasoning, in *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979), the Supreme Court held the doctrine of implied warranty applicable to residential leases. A lease, said the Court, "is in the nature of a contract and is to be controlled by principles of contract law." 486 Pa. at 284, 405 A.2d at 903. The Court continued:

The covenants and warranties in the lease are mutually dependent; the tenant's obligation to pay rent and the landlord's obligation imposed by the implied warranty of habitability to provide and maintain habitable premises are, therefore, dependent and a material breach of one of these obligations will relieve the obligation of the other so long as the breach continues.

*Id.*

The Court then held that upon breach of the implied warranty of habitability, a tenant may withhold the rent, "subject to the court's discretionary power to order him, following a hearing on the petition of the landlord or tenant, to deposit all or some of the rent with the court or a receiver appointed by the court." 486 Pa. at 292, 405 A.2d at 907. The Court also recognized the alternative "repair and deduct" remedy, whereby the tenant performs whatever service the landlord has refused to provide and deducts the cost of his performance from the amount of rent due. 486 Pa. 292–93, 405 A.2d at 907.[1]

1. The following courts of other jurisdictions have similarly held that a residential landlord's implied covenant of habitability and the tenant's covenant to pay rent are mutually dependent: *Hinson v.*

Pawco argues, however, that *Pugh v. Holmes* should be limited in its application to residential lease transactions:

It is readily apparent that the conclusions of this Court and the Supreme Court were predicated on conditions in the housing market, and the unequal bargaining positions of landlords and tenants in residential leases.... It is therefore respectfully submitted that it is fair to say that the intention of the Supreme Court was to affirm this Court's abolition of the doctrine of caveat emptor and adoption of an applied [*sic*] warranty of habitability in residential leases; and in that limited respect to hold that principles of contract law would be applicable to leases. (Appellee's Supplemental Brief at 13, 17)

In support of this argument, Pawco cites decisions declining to extend the doctrine of warranty of habitability to commercial leaseholds. *Van Ness Industries, Inc. v. Claremont Painting*, 129 N.J.Super. 507, 324 A.2d 102 (1974); *Cook v. Salishan Properties, Inc.*, 279 Or. 233, 569 P.2d 1033 (1977); *Service Oil Co., Inc. v. White*, 218 Kan. 87, 542 P.2d 652 (1975).

■■■ We acknowledge that courts have been particularly concerned with the plight of the residential lessee, who often finds himself in a weaker bargaining position than his landlord. Moreover, without deciding the point, we may assume that the issues presented on a residential tenant's claim that premises are not habitable are significantly different from those presented on a commercial tenant's claim that the premises are not suitable for its business operations. The critical fact remains, however, that Pennsylvania law

*Delis*, 26 Cal.App.3d 62, 102 Cal.Rptr. 661 (1972); *Javins v. First Nat. Realty Corp.*, 138 U.S.App.D.C. 369, 428 F.2d 1071, *cert. denied*, 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970); *Brown v. Southall Realty Co.*, 237 A.2d 834 (D.C.App.1968); *Lemle v. Breeden*, 51 Haw. 426, 462 P.2d 470 (1969); *Jack Spring, Inc. v. Little*, 50 Ill.2d 351, 280 N.E.2d 208 (1972); *Mease v. Fox*, 200 N.W.2d 791 (Iowa 1973); *Boston Housing Authority v. Hemingway*, 363 Mass. 184, 293 N.E.2d 831 (1973); *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248 (1971); *Berzito v. Gambino*, 63 N.J. 460, 308 A.2d 17 (1973); *Glyco v. Schultz*, 35 Ohio Misc. 25, 289 N.E.2d 919 (1972); *Pines v. Perssion*, 14 Wis.2d 590, 111 N.W.2d 409 (1961).

has come to recognize that the actual subject matter of most leases, commercial or residential, is the building leased, not the land upon which the building stands, and that therefore contract law rather than property law should be applied to disputes between landlords and tenants. *Pugh v. Holmes, supra; Albert M. Greenfield, Inc. v. Kolea, supra.*[2] It follows that although a commercial tenant may not be able to defend an action for rent due or in ejectment by alleging the landlord's breach of warranty of habitability, it may be able to defend on other contractual grounds.

One recent example of a commercial tenant doing just that is *Teodori v. Werner*, 490 Pa. 58, 415 A.2d 31 (1980). In *Teodori* the Supreme Court held that a commercial tenant did not owe an independent obligation to pay full rent when his landlords breached a promise in the lease and the promise was a significant inducement to the making of the lease. There, a tenant leased a retail store in a shopping center, where he operated a jewelry business and gift shop. The lease contained a "non-competition" clause, in which the landlords agreed not to "lease or operate as owner any space in the shopping center or any extension thereof primarily as a jewelry or gift shop." The landlords instituted a proceeding against the tenant for entry of judgments by confession for rent due and ejectment. After the judgments were confessed, the tenant petitioned to open them, alleging that the landlords had violated the non-competition clause by leasing shopping center space to another engaged in the operation of a competing jewelry and gift shop business. The chancellor dismissed the tenant's petition, and on appeal, this court affirmed. The Supreme Court, however, reversed, rejecting the landlords' argument that regardless of their non-compliance with the non-competition clause, the

---

**2.** *See also Ringwood Associates v. Jack's Route of 23, Inc.*, 153 N.J.Super. 294, 379 A.2d 508 (1977), *aff'd.*, 166 N.J.Super. 36, 398 A.2d 1315 (1979), where the New Jersey Superior Court, acknowledging the trend to apply contract principles to residential leases, held that one such principle, requiring a landlord to mitigate damages upon the tenant's default and surrender of leased premises, also applied to commercial landlords.

tenant owed an independent obligation throughout the term of the lease to pay the stated rents. Said the Court:

Landlords' theory is unsupportable. It is true that "[a]t old common law the promises made by a landlord in a lease were independent obligations, so that the failure of the landlord to perform them did not give the tenant any right to disregard his obligations under the lease." Restatement (Second) of Property, Landlord and Tenant, supra, Introductory Note to Chapter 7. See generally I Friedman on Leases § 1.1 (1974). It is now clear, however, that this view of landlord-tenant relations, incorrectly resting more on notions of property law than on principles of contracts, has no place in modern jurisprudence. As long ago as 1934 this Court in *McDanel v. Mack Realty Co.*, supra, recognized the error of the independence-of-obligations approach as applied to a commercial lease transaction. At issue in *McDanel* was the scope of the commercial tenant's remedies where the commercial landlord defaulted on its covenant to heat the leased premises. In addition to the options of (1) performing "at his own expense" and deducting this cost from the rent due or (2) surrendering the premises "to relieve himself from any further payment of rent," the tenant

"(3) ... can retain possession of the premises and deduct from the rent the difference between the rental value of the premises as it would have been if the lease had been fully complied with by the landlord and the rental value in the condition it actually was."

*McDanel*, 315 Pa. at 178, 172 A. at 98. See *Gorman v. Miller*, 27 Pa.Super. 62, 68 (1905).

[citations omitted]

\* \* \* \* \* \*

So too the independence-of-obligations approach must be rejected where the landlord's promise to perform "is a significant inducement to the making of the lease by the tenant." Restatement (Second) of Property, Landlord and Tenant, supra. It is obvious that a landlord's non-competition promise is critical to a commercial lease agreement

like the one here. "The mere presence in a lease of a noncompetition promise by the landlord justifies the conclusion that it is essential that the promise be observed if the tenant is to conduct his business on the leased property profitably." Id. at § 7.2 Comment b, p. 254. See also Friedman, supra, at p. 7 (citing cases). It therefore must be concluded that absent a contrary agreement between the parties a tenant's obligations are not independent of a landlord's promise under a non-competition clause.

490 Pa. at 64–65, 415 A.2d at 33–34 (footnotes omitted).

 Just as the independence-of-obligations approach was abandoned in *Teodori*, it must be abandoned here. Bergman has presented evidence to support its argument that Pawco's promise to supply oil for heat and live steam was critical to its entering into the lease, and that Pawco's refusal to provide oil for heat and steam disrupted Bergman's business. We recognize that Pawco disputes Bergman's evidence. For example, Pawco argues that the evidence shows that Bergman was conducting its operations in such a manner as to waste steam. Appellee's Supplemental Brief at 4, 8. Indeed, there are several disputes between the parties, which we have not considered it necessary to mention, as, for example, Pawco's claim that Bergman has avoided charges for water services by engaging in "fraud and deception." Appellee's Supplemental Brief at 5. We express no opinion regarding the merits of any of these disputes. A party, such as Bergman, petitioning to open a judgment does not have to produce evidence proving that if the judgment is opened, it will prevail, but only that it will get to the jury. *Foerst v. Rotkis*, 244 Pa.Super. 447, 368 A.2d 805 (1976). Pa.R.C.P. 2959(e). In testing the sufficiency of the petitioner's evidence, a court must view it in the light most favorable to the petitioner, while rejecting the contrary evidence of the respondent. *M. H. Davis Estate Oil Co., Inc. v. Sure Way Oil Co., Inc.,* 266 Pa.Super. 64, 403 A.2d 95 (1979); *Foerst v. Rotkis, supra.* Having determined that the petitioner has produced sufficient evidence to get to a jury, the court must order the judgment opened; it may not

further weigh the evidence in support of the defense. *Tenreed Corp. v. Philadelphia Folding Box Co.*, 256 Pa.Super. 49, 389 A.2d 594 (1978); *Christie v. Open Pantry Food Marts, Inc.*, 237 Pa.Super. 243, 352 A.2d 165 (1975). Here, the lower court did not doubt the sufficiency of Bergman's evidence to show that Pawco had violated its promise to supply oil for heat and live steam, and that this promise was critical to Bergman's entering into the lease. Instead, as we have stated, the court held as a matter of law that Pawco's promise to supply oil was independent of Bergman's promise to pay rent, and that Bergman's withholding of rent represented a "unilateral action" that could not be justified by reference to Pawco's violation of its promise. It is only fair to note that when the lower court reached this conclusion, the Supreme Court had not decided *Teodori v. Werner, supra.* Given that decision, however, we think it plain that Bergman should be allowed to defend against Pawco's complaints.

The orders of the lower court refusing to open the judgments are reversed.

PRICE, J., notes dissent.