429 A.2d 645

William R. DUFFY

v.

Kenneth C. GERST, Ralph D. Tamburro, Freeman, Foltz &
Valicenti Realty, Inc., Eugene Gottesman and Anthony
D. Valicenti.

Appeal of Kenneth C. GERST and Ralph D. Tamburro.

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed May 1, 1981.

Alfred C. Maiello, Pittsburgh, for appellants.

Reuben Fingold, Pittsburgh, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order denying a petition to strike or open a default judgment. So far as the order denies the petition to strike, we shall affirm, for we find no such defect on the face of the record as warrants striking the judgment. So far as the order denies the petition to open, however, we shall reverse and remand for further proceedings as provided by Pa.R.C.P. 209, for we have concluded that the lower court should not have ruled on the basis of the petition and answer alone.

On June 2, 1978, appellants, Kenneth C. Gerst and Ralph D. Tamburro, entered into an agreement with appellee, William R. Duffy, for the sale of a parcel of real estate in Millvale. The agreement provided that appellants would convey the property free and clear of all encumbrances for a consideration of $105,000, appellee to pay $5,000 earnest money upon the signing of the agreement. The agreement also provided for the parties' remedies. If appellee as buyer defaulted, appellants as seller could elect to (a) retain the earnest money, or (b) apply the earnest money towards the purchase price and proceed with an action for specific performance, or (c) apply the earnest money towards seller's loss on resale and proceed with an action at law for damages. If appellants as seller defaulted, appellee as buyer could elect (a) to waive any claim for loss of bargain, in which event appellants as seller would repay the earnest money and, in addition, the cost of title examination, survey, and attorney's fees, or (b) an action for specific performance, or (c) an action at law for damages.

Appellee paid the $5,000 earnest money, and it was held in escrow by Freeman, Foltz & Valicenti Realty, Inc., and real estate agents Eugene Gottesman and Anthony D. Valicenti. When title examination disclosed two mortgages on the property and several judgment liens, appellee, on September 6, 1978, filed a complaint in equity against appellants, Freeman, Foltz & Valicenti Realty, Inc., Gottesman, and Valicenti, alleging:

18. Due to the state of the record, defendants Gerst and Tamburro [appellants] are unable to convey subject property to plaintiff [appellee] with a fee simple title free and clear of encumberances [sic].

19. Plaintiff has requested defendants Gerst, Tamburro, Realty [Freeman, Foltz & Valicenti, Inc.] Gottesman and Valicenti to rescind the agreement . . . and return the hand money to him, but defendants have failed and refused to comply.

20. Defendants have threatened plaintiff that they will convey subject property to a third party at a substantially lessor [sic] amount than the consideration provided for in the agreement . . . and bring an action at law against plaintiff for the difference in the amount between the consideration in the agreement . . . and the amount they sell the property to another party.

The relief prayed for was a decree restraining appellants from conveying the property pending final determination of the action, declaring the agreement of sale between appellants and appellee null and void, directing Freeman, Foltz & Valicenti Realty, Inc., Gottesman, and Valicenti to return the $5,000 earnest money plus interest, and "[s]uch other relief as the Court may deem necessary and proper."

In response to the complaint, Freeman, Foltz & Valicenti Realty, Inc., Gottesman, and Valicenti, returned the $5,000 earnest money to appellee, though not with interest. Thereupon, on October 19, 1978, appellee moved to dismiss the action as to them. This motion was granted. Also on October 19, 1978, the prothonotary, on appellee's praecipe, entered a default judgment against appellants. On November 3, 1978, the lower court, FLAHERTY, J., ordered that a hearing should be held on November 21, 1978, for the framing and entry of a final decree. The hearing was held, as scheduled, before NARICK, J. Appellants failed to appear. Judge NARICK entered a final decree declaring the agreement of sale null and void, and entering judgments against the appellants for the following amounts:

| | |
|---|---|
| Interest on $5,000 at 6% from August 8, 1978 to October 18, 1978 | $ 57.53 |
| Reimbursement for cost of title search | 250.00 |
| Counsel fees | 3,500.00 |
| Total | 3,807.53 |
| And costs | |

On March 22, 1979, appellants filed their petition to strike or open the judgment. At this point, the history of the case becomes a bit complex. Appellee filed an answer to the petition to strike or open, and the petition and answer came before Judge FLAHERTY. After argument on the petition and answer, Judge FLAHERTY, on May 23, 1979, issued a rule to show cause why the judgment should not be opened. It does not appear that the judge ruled on the petition so far as it asked that the judgment be stricken. Apparently, counsel for neither side received notice of the rule to show cause why the judgment should not be opened. Shortly after issuing the rule, Judge FLAHERTY ascended to the Supreme Court of Pennsylvania. Accordingly, the case was reassigned to Judge NARICK, who by order of June 19, 1979, announced that he would dispose of "[the case] [u]pon consideration of said Petition and Answer . . . unless either or both counsel request the opportunity to argue their respective positions on or before July 17, 1979." When Judge NARICK heard argument on the petition and answer, on July 17, he discovered that counsel had no knowledge of the rule that had been issued by Judge FLAHERTY on May 23. Judge NARICK thereupon advised counsel that not-withstanding the rule, he would dispose of the case on petition and answer alone, and on August 2, 1979, he issued an order revoking the rule and dismissing the petition to strike or open the judgment. It is appellant's appeal from this order that brings the case before us.

—1—

In their petition, appellants assign only one reason why the judgment should be stricken, namely, appellee's "failure to comply with Rule 236." Petition, para. 30. In their brief to us, appellants assign as an additional reason that the

judgment "is excessive and improper on the face of the record." Appellants' brief at 5.

−a−

Pa.R.C.P. 236 provides in part:

(a) The prothonotary shall immediately give notice by ordinary mail of the entry of any order, decree or judgment:

\*       \*       \*       \*       \*       \*

(2) . . . to each party who has appeared in the action or to the party's attorney of record.

Allegheny County Rule 236*1 provides in part:

(a) In cases where a party has not appeared, the prothonotary shall give written notice of the entry of judgment or decree by ordinary mail addressed to the last known address of each party who has not appeared.

The record indicates that in compliance with these rules, on October 20, 1978, appellants received notice of the entry of the default judgment and of the lower court's order scheduling a hearing on November 21, 1978, for the framing and entry of a final decree. Appellants allege in their petition to strike or open that they expected the final decree to direct payment of $427.05, comprising interest on the earnest money, $58.03; cost of the title report, $250; and costs of the suit, $118.75. Petition, para. 18. As noted above, in fact the final decree directed payment of $3,807.53, of which amount $3,500 was identified as "[c]ounsel fees." Appellants allege in their petition to strike or open that they never received notice from the prothonotary of this final decree, as they should have under Pa.R.C.P. 236 and Allegheny County Rule 236*1. Petition, paras. 19–21. Appellee's answer to the petition is non-responsive, so that we may take it as fact that appellants did not receive notice of the final decree.

■ The issue therefore becomes whether a failure of the prothonotary, disclosed by the record, to comply with Pa.R.C.P. 236 and Allegheny County Local Rule 236*1 is a ground for striking a judgment. We hold that it is not. Appellants claim that because they did not receive notice of the final

decree, their "appeal rights in regard to the Final Decree and Award were prejudiced." Appellants' Brief at 18. This is not so, for their remedy was not to appeal from the decree, but rather, as the decree was entered pursuant to a default judgment, to petition to strike or open the judgment, which appellants did. In our opinion, the remedy for a failure by the prothonotary to give the notice required by Rule 236 and its local counterpart 236*1 is not to strike the judgment but to ensure that the party who was entitled to the notice is not prejudiced. How this may be achieved will vary according to the particular facts of the case. As an illustration, however, it may be noted that if the plaintiff argues that the defendant did not file a petition to open promptly, the argument may well be rejected upon proof that the defendant did not receive the notice to which he was entitled, but did act promptly once he learned, despite the lack of notice, that the judgment had been entered. This view of what should be the remedy for a failure by the prothonotary to give the notice required by Rule 236 and its local counterpart 236*1 is confirmed by subsection (c) of Rule 236, which provides:

> (c) Failure to give the notice or to mail the required documents, or both, shall not affect the lien of the judgment.

Since lack of notice is not a ground for removing the lien of the judgment, it cannot be a ground for striking the judgment upon which the lien is based.

−b−

The agreement of sale provided that in the event of appellants' default as seller, appellee as buyer could elect to

> [w]aive any claim for loss of bargain, in which event Seller . . . agrees to repay to Buyer the earnest money . . . and, in addition, reimburse Buyer for all direct, out-of-pocket costs and expenses (i. e., title examination, survey, and attorney's fees) and to this end Seller does . . . authorize . . . any attorney . . . to . . . confess judgment . . . for said earnest money . . . . and for said direct, out-of-pocket

costs and expenses including an attorney's commission of 10% (but not less than $200.00) together with costs of suit

. . . .

Appellant argues that under this provision, appellee, in confessing judgment, was limited to an attorney's fee of $500, *i. e.*, 10% of the $5,000 earnest money. Since the final decree awarded an attorney's fee of $3,500, appellants conclude the decree is on the face of the record excessive and so should be stricken. Appellants' Brief at 20.

■ There might be something to this argument if the agreement of sale had provided that the attorney's fee should "not exceed $500" instead of providing that it should "not [be] less than $200.00." In fact, however, the agreement set no such dollar limit on the attorney's fee. It is fair to read the agreement as meaning that the attorney's fee could not exceed 10% of the purchase price, *i. e.*, 10% of $105,000, or $10,500, but otherwise the only upper limit imposed by the provision is that the attorney's fee had to represent a liquidated rather than an uncertain or contingent amount—that "Seller . . . [will] reimburse Buyer for all direct, out-of-pocket costs and expenses . . . ." It may be assumed that implicit in this provision is the condition that the attorney's fee must be a reasonable fee. *See Kuhn v. Princess Lida of Thurn-Taxis*, 119 F.2d 704 (3rd Cir. 1941); *In re Lohm's Estate*, 440 Pa. 268, 269 A.2d 451 (1970). The question the lower court therefore had to decide, in entering the final decree, was, What attorney's fee, between the minimum of $200 and the maximum of $10,500, represented a reasonable, direct, out-of-pocket expense? Nothing on the face of the record demonstrates that the court's answer to this question—that the fee should be $3,500—represented an "excessive and improper" award.

–2–

–a–

Before we consider appellants' petition to open the judgment, it is necessary to comment on the procedural history of the case, which we have characterized above as a bit

complex. Appellants argue that because Judge FLAHER-
TY had issued a rule to show cause why the petition should
not be opened, on May 23, 1979, Judge NARICK was power-
less to order the parties to proceed on petition and answer,
when the case was assigned to him following Judge FLAH-
ERTY ascending to the Supreme Court. Appellants' Brief
at 13–17.

This argument is without merit. To be sure, a
judge should not ordinarily place himself in a position that
may require him to overrule a decision by a judge of the
same court. *United States v. Wheeler*, 256 F.2d 745 (3rd Cir.
1958). However, this rule is not absolute. Sometimes a
judge cannot avoid placing himself in such a position. *Id.*
The present case is such a case. Judge FLAHERTY was no
longer available to hear appellants' petition to open. Judge
NARICK therefore had to hear it. In doing so, he was not
only free but required to proceed. He did not ignore the
rule to show cause issued by Judge FLAHERTY. Instead,
he heard argument by the parties as to why he should not
decide the case on petition and answer. Only after argu-
ment did he revoke the rule, and decide the case on petition
and answer. The issue we must decide is not whether Judge
NARICK was *precluded* by Judge FLAHERTY's rule from
deciding the case on petition and answer; plainly, he was
not, for the parties were before him, and the case was within
his subject matter jurisdiction. *Hankin v. Hankin*, 279
Pa.Super. 179, 420 A.2d 1090 (1980). The issue is rather
whether in deciding the case on petition and answer, Judge
NARICK *properly exercised* the power he had in accordance
with the principles that should control the decision whether
to grant a petition to open a judgment. In short, the issue is
not whether Judge NARICK *could* deny appellants' petition
but whether he *should* have.

–b–

A petition to open judgment is an appeal to the
equitable powers of the court. A ruling denying or granting
the petition will therefore not be reversed except for an

error of law or abuse of discretion. *Ashton v. Ashton*, 257 Pa.Super. 134, 390 A.2d 282 (1978); *Carducci v. Albright Galleries, Inc.*, 244 Pa.Super. 48, 366 A.2d 577 (1976). The court should not exercise its discretion to grant the petition unless the petitioner has reasonably explained his default (in this case, appellants' failure to answer appellee's complaint in equity); shown a meritorious defense; and timely filed his petition. *Liquid Carbonic Corp. v. Cooper & Reese, Inc.*, 272 Pa.Super. 462, 416 A.2d 549 (1979); *Thompson v. Hahn Motors, Inc.*, 269 Pa.Super. 271, 409 A.2d 884 (1979).

In its opinion in support of its order denying appellants' petition to open, the lower court discusses only the first of these three requirements. Thus the court states:

Accepting every averment in Appellants' Petition as true, we do not believe that the appellants have properly established a reasonable excuse for their failure to respond. Slip op. at 2.

–i–

■ Appellants explain their failure to answer appellee's complaint as the result of their mistaken impression that refunding the earnest money would end appellee's suit. In their petition to open, they allege that when they were served with the complaint, they instructed their co-defendants' Freeman, Foltz & Valicenti Realty, Inc., Eugene Gottesman, and Anthony Valicenti, to return the earnest money to appellee. Petition, paras. 10–12. (Indeed, they allege that even before the complaint was served, they had given such instructions, when they learned that they could not convey clear title. Petition, paras. 5–6.) Appellants further allege that they "were informed by Co-defendants that they would take care of the legal matter," petition, para. 12, and that "Attorney for Co-defendants prepared for Petitioners [appellants] a written authorization directing said Co-defendants to release said handmoney, which authorization Petitioners duly executed on October 2, 1978," *id.*, para. 13. Appellants further allege that "following execution of said release, Petitioners continued to justifiably rely

on Co-defendants' assurance that they would handle the legal matter." Petition, para. 14.

We have stated before that a defendant's failure to engage an attorney is not in and of itself a sufficient excuse for failure to answer a complaint. *See, e. g., St. Joe Paper Co. v. Marc Box Co., Inc.,* 260 Pa.Super. 515, 394 A.2d 1045 (1978). It is a defendant's responsibility to respond to, and not ignore, a claim. Here, however, appellants have explained their failure to engage an attorney, and their consequent failure to answer the complaint, by saying that they did respond to appellee's claim, and believed, because of representations made to them by their real estate agents and broker, that engaging an attorney would not be necessary. Appellee's answer to appellants' explanation, as alleged in the petition to open, was to demand proof for lack of knowledge.

In these circumstances it seems to us that if appellants were to prove their allegations, they would have reasonably explained their failure to answer the complaint, for it would then appear that they had promptly moved to respond to at least the principal concern of appellee as buyer—the return of the earnest money. It was not as though appellants evaded the claim, or as though no attorney were in the picture. To the contrary, according to appellants, their real estate agents and broker had an attorney, who prepared a legal document providing for return of the earnest money, which appellants executed, and who assured appellants that appellee's claim was being "handle[d]." The record discloses no reason why appellants should have supposed that their instructions were not being obeyed.

While every case differs on its facts—and cases concerning petitions to open are particularly difficult to reconcile because of their factual differences—still, the present case may be compared with *Maruccio v. Houdaille Indus., Inc.,* 254 Pa.Super. 560, 386 A.2d 91 (1978), where we accepted a school district's explanation of its failure to answer the complaint as the result of its belief that it was being properly represented by its solicitor. In addition to notify-

ing its solicitor of the action, the school district had notified its carrier. In contrast, in *Myers v. Mooney Aircraft, Inc.,* 429 Pa. 177, 240 A.2d 505 (1967), it appeared that the defendant had "by its inaction and resort to an improper procedure" "deliberately taken" a "dangerous risk." *Id.,* 429 Pa. at 190, 240 A.2d at 513.

We recognize that appellants may not be able to prove their explanation of why they did not answer the complaint. That, however, is not the issue at this point. As notcd above, the lower court accepted appellants' allegations as true. Having done so, the lower court should not have held that as a matter of law appellants had not reasonably explained their failure to answer the complaint. To penalize so severely a party who did not ignore but recognized a claim, to the extent of executing and giving to an attorney a legal document authorizing return of the earnest money in contention, was, we believe, an abuse of discretion.

–ii–

█ In considering whether appellants have shown a meritorious defense to appellee's claim, a distinction should be noted, which we have alluded to above. Appellants have offered no defense to appellee's claim for interest on the refunded earnest money, which the lower court stated in the final decree as $57.53, or for the cost of the title search, stated in the final decree as $250. Appellants' defense is to appellee's claim for an attorney's fee, stated in the final decree as $3,500.

We have already discussed the provisions of the agreement of sale regarding the attorney's fee, when we considered appellants' petition to strike the judgment. There we concluded that appellee was entitled to an attorney's fee of between $200 and $10,500, depending upon what fee was found reasonable. We may assume that the lower court, in entering its final decree, was of the opinion that a fee of $3,500 was reasonable. However, we are unable to determine the basis of that opinion. The court does not discuss the matter in its opinion in support of its order denying appellants' petition to open, nor do we have any other way

of knowing what information appellee gave the court at the hearing on the final decree in support of the claim for an attorney's fee. In his answer to the petition to open, appellee alleges nothing in support of a fee of $3,500, as, for example, that his attorney had spent such and such number of hours on the matter, or even that he had received a bill from his attorney for such a fee. Instead, appellee contents himself with alleging that "[p]etitioners [appellants] authorized an attorney's fee for as much as $10,500 plus cost of title examination and survey," Answer to Petition, para. 28, which is not so; appellants authorized only such fee as was reasonable. Finally, it should be noted that in his complaint, appellee made no demand for an attorney's fee, in any amount; he only demanded an order restraining conveyance of the property, declaring the agreement of sale null and void, and directing return of the $5,000 earnest money plus interest, and for "[s]uch other relief as the Court may deem necessary and proper." In this regard, appellants allege in their petition to open that when they received notice of the judgment, they asked appellee's attorney why the judgment had been entered against them, and

were informed that they would have to pay $427.05 on said Judgment itemized as follows:

| | |
|---|---|
| Interest | $ 58.30 |
| Cost of Title Report | 250.00 |
| Cost of Suit | 118.75 |
| | $ 427.50 |

Petition, para. 18.

In these circumstances, we are unwilling to hold that as a matter of law appellants have no meritorious. defense to appellee's claim for an attorney's fee of $3,500. If a jury were to accept appellants' allegations that they promptly moved to return the earnest money, and after it was returned, were informed by appellee's attorney that their only liability was for interest and costs totalling $427.50, it might find that a fee of $3,500 was excessive. We do not say that a jury would so find, for appellee's answer to the petition to open denies appellant's allegations. In deciding whether a petitioner has shown a meritorious defense, however, we do

not decide whether the defense will prevail, but only wheth-
er it will be sufficient to take the case to the jury, if the
judgment is opened and the petitioner permitted to defend
the claim. *Tenreed Corp. v. Phila. Folding Box. Co.*, 256
Pa.Super. 49, 51, 389 A.2d 594, 597 (1978); Pa.R.C.P. 2959(e).

–iii–

It will be recalled that on appellants' failure to answer the
complaint, the prothonotary, on appellee's praecipe, entered
the default judgment on October 19, 1978; the lower court
entered the final decree on November 21, 1978; and appel-
lants filed their petition to open on March 22, 1979. In
arguing that their petition was timely, appellants point to
the allegation in the petition that because of the prothono-
tary's failure to give the notice required by Pa.R.C.P. 236
and its local counterpart, Allegheny County Rule 236*1, they
did not learn of the first decree until informed of it by a
third party on December 19, 1978. Petition, para. 20. In
this regard, we may refer to our discussion above, where we
held, in discussing appellants' petition to strike, that failure
to comply with Rule 236 and its local counterpart was not a
ground for striking a judgment but was a factor that should
be considered in deciding whether the party against whom
the judgment has been entered acted promptly.

Assuming, therefore, that appellants should be re-
garded as having filed their petition three months after the
final decree instead of four months, the question becomes
whether this delay was so long as to require that the petition
be denied as not timely, even though, if its allegations are
true, it shows a reasonable explanation for appellants' fail-
ure to answer the complaint, and a meritorious defense to
the complaint.

In their petition, appellants explain the delay by alleging
that in January 1979 they "requested Co-Defendants to
protect Petitioners and take proper action to remove the
Judgment," Petition, para. 22, but that "Co-Defendants have
refused to take action to remove the Judgment," *id.*, para.

23. In his answer to the petition appellee denies these allegations for lack of knowledge.

It may be granted that appellants' allegations are not so full as they might have been. In particular, it is not stated when appellants' co-defendants refused to act, and how soon after that refusal appellants filed their petition to open. Even so, given appellee's denial, a factual issue was presented, which should have been resolved by resort to the procedures provided by Pa.R.C.P. 209.

In *Shainline v. Alberti*, 266 Pa.Super. 129, 403 A.2d 577 (1979), we held that a lower court had acted prematurely in deciding a petition to open a default judgment on petition and answer alone where there were at issue material questions of fact. We said:

The factual issues engendered by the petition and answer were thus ripe for resolution under the machinery of Rule 209. To activate the rule, it is incumbent on the petitioner to take depositions or to order the cause for disposition on petition and answer, in which event all factual averments in the answer are deemed admitted. Or, to expedite the proceedings, the respondent may, after 15 days, himself order the cause for argument on petition and answer, in which event, again, all averments of fact in the answer are deemed admitted. *See American Corp. v. Cascerceri*, 255 Pa.Super. 574 n. 6, 389 A.2d 126 n. 6 (1978). Instead of waiting for either party to take action under the rule, the court decided the petition on petition and answer alone . . . . The court stressed in its opinion that appellant had "failed to present any evidence whatsoever in support of its various allegations." Opinion at 3. This conclusion was clearly premature under Rule 209. The rule places no time limits on either petitioner or respondent to take action and thus, at the time the court injected itself into the proceedings, either party had the option to take a rule on the other to proceed under Rule 209. *Maurice Goldstein Company, Inc., v. Margolin*, 248 Pa.Super. 162, 374 A.2d 1369 (1977) (lower court, in prema-

ture decision, held petitioner had failed to substantiate his allegation that he had no notice of complaint; remanded for proceedings under Rule 209 to give petitioner opportunity to supply proof); *Zinck v. Smashy's Auto Salvage, Inc.*, 250 Pa.Super. 553, 378 A.2d 1287 (1977); *Instapak Corp. v. S. Weisbrod Lamp and Shade Company, Inc.*, 248 Pa.Super. 176, 374 A.2d 1376 (1977); cf. *D'Amore v. Erthal*, 421 Pa. 417, 219 A.2d 674 (1966). Until one of these parties took action under Rule 209, or until some other force spurred matters along, the court should not have acted. We therefore find it necessary to remand for further proceedings to allow appellant to prove his allegations under the procedures of Rule 209.

266 Pa.Super. 129, 403 A.2d at 580–81 (1979).

We believe that such a remand is particularly appropriate in the present case. As the record stands now, with the case decided on petition and answer alone and without any hearing, one can have no confidence that justice has been done. After the procedures provided by Rule 209 are complied with, however, the lower court will be able to determine what are the facts, which is to say, whether appellants have or have not reasonably explained their failure to answer the complaint, shown a meritorious defense, and timely filed their petition. The court will then be in a position from which it can exercise its discretion in an informed manner, either to grant or deny the petition to open, according to the evidence before it.

So far as the order of the lower court denies appellants' petition to strike, it is affirmed, but so far as the order denies appellants' petition to open, it is reversed and the case is remanded for proceedings consistent with this opinion. Upon the completion of those proceedings, the lower court shall enter an order either granting or denying appellants' petition to open, as the court considers the evidence requires. Any further appeal in this case must be from such order.