## C and B Enterprises v. Intercarbon Coal Company

*Joseph D. Messina,* for plaintiff.
*John M. O'Connell, Jr.,* for defendant.

COFFROTH, *P.J.,* July 14, 1982 — This action is here on defendant tenant's petition to open the judgment confessed by plaintiff landlord for $24,780 rental alleged to be due under a written lease between the parties, on the ground of plaintiff landlord's "failure to do such acts of repair as to render the leased premises fit for the uses for which the defendant contracted", and "plaintiff's neglect of the premises did in fact make them unhabitable for purposes of the defendant", thus terminating the lease and justifying defendant's nonpayment of rent and vacating the premises. Plaintiff filed a respon-

sive answer denying the averments of the petition. Depositions of the president and of an employee of defendant were taken and filed, the case was orally argued and briefs filed and is now ready for disposition.[1]

At this stage of the case, the issue is whether the evidence presented, viewed in the light most favorable to defendant-petitioner, if "produced in a jury trial would require the issue to be submitted to the jury"; if so, we are required to open the judgment and allow those issues to go to trial. Civil Rule 2059(e); Lincoln Bank v. Kelly, 282 Pa. Super. 261 (1980); Van Arkel v. Moss Properties Inc., 276 Pa. Super. 547 (1980); Tenreed Corp. v. Philadelphia Folding Box Company, 256 Pa. Super. 49 (1978); Wahl and Jones v. M. F. Land Company Inc., 30 Somerset L. J. 291, 293-294 (1975). Applying that rule to the depositions and admissions in the pleadings, for purposes of this proceeding the following are the

---

1. Defendant's petition is entitled "Petition To Set Aside Confessed Judgment", and the prayer for relief asks that the "validity of the judgment entered. . . be inquired into and the judgment be set aside". This is improper procedure, or at least improper terminology; the petition should seek relief in the form of striking off or opening the judgment, or both under Civil Rule 2959(a). Although the petition was not attacked on that ground, subsequent procedure depended on whether the relief sought was opening or striking off the judgment, and since the averments of the petition made relief dependent entirely on facts outside the record, our order of April 2, 1981, directed the parties to proceed under Civil Rule 209 as on a petition to open, to which there has been no objection. Under these circumstances there was no improper sua sponte action by the court. See: Kophazy v. Kophazy, 279 Pa. Super. 373 (1980); Pittsburgh National Bank v. Garrity, 31 Somerset L. J. 333, 336 note [3] (1976).

## FACTS

The parties entered into a written lease dated August 1, 1978, for the basement area of a commercial building in Hooversville, Pa., for use as a business office, for a term of seven years with renewal options in the lease. Petitioner lessee began occupancy on or about the date of the lease, but found that during rainy periods so much water leaked into the premises as to make them untenantable. Despite frequent complaints to respondent-landlord the condition was not corrected, whereupon tenant was compelled to vacate the premises and did so in August, 1980. Tenant paid the rental for the period of its occupancy but refused to pay rental for the remainder of the term, whereupon plaintiff confessed judgment on the lease for the latter which this proceeding was filed to open.

## DISCUSSION

Petitioner's theory is, as stated in its brief, that the water invasion "made the premises dangerous and uninhabitable for office purposes". Counsel for landlord responds that tenant is asserting an "implied warranty of habitability", that there is no such warranty implied in law in Pennsylvania except for residential property, and that in any event tenant did not give adequate notice to landlord before vacating the premises.

On the question of legal obligations of landlord and tenant in Pennsylvania regarding tenantability or habitability (fitness or suitability for the purpose of the lease), we note the following propositions:

(1) Prior to enactment of the Rent Withholding Act of 1966 PL 1534 as amended (35 PS §1700-1), there was no implied-in-law warranty of habitability in a lease, the tenant had only such protection

against unfitness for occupancy as he was foresighted enough to incorporate in the terms of his lease, and the common law rule of caveat emptor was fully applicable, Pugh v. Holmes, 486 Pa. 272, 279-280 (1979); the only common law escape for unsuitability for occupancy, without adequate lease provisions, was a wrongful eviction by the landlord, actual or constructive, in violation of the actual or implied covenant for quiet enjoyment. Id, 286; Pugh v. Holmes, 253 Pa. Super. 76, 83 (1978); Kahn v. Bancamerica-Blair Corp., 327 Pa. 209 (1937); Commonwealth, Department General Services v. Kitchen Appliance Distributors Inc. (No. 1), 41 Somerset L. J. 368, 27 D.&C.3d 91 (1981); PLE, Landlord and Tenant §281.

(2) The Rent Withholding Act by its terms applies only to cities of the first three classes, and therefore has no application here. Pugh v. Holmes, supra, 486 Pa. at 286.

(3) In Pugh v. Holmes, supra, affirming 253 Pa. Super. 76, 384 A.2d 1234 (1978) supra, the Pennsylvania Supreme Court for the first time created an implied warranty of habitability in residential leases as a matter of law. Although the Supreme Court did not expressly limit the warranty to residential leases or exclude commercial leases, much of its language refers to the residential lease and that is the type of lease there involved; the Superior Court had expressly limited the warranty to residential cases, 253 Pa. Super. supra at 86. In Pawco Inc. v. Bergman Knitting Mills Inc., 283 Pa. Super. 443, 424 A.2d 891 (1980), the court said on the subject of the habitability warranty (451):

"We acknowledge that courts have been particularly concerned with the plight of the residential lessee, who often finds himself in a weaker bargaining position than his landlord. Moreover, without decid-

ing the point we may assume that the issues presented on a residential tenant's claim that premises are not habitable are significantly different from those presented on a commercial tenant's claim that the premises are not suitable for its business operations."[2] We have found no Pennsylvania case which authoritatively holds that there is no warranty of habitability in a commercial lease; although it cannot be said with positive assurance that there is such a warranty in commercial leases in Pennsylvania, the question is not closed. The rule is stated in Restatement Of Property 2d, Landlord and tenant §5.1 as creating an implied-in-law obligation of landlord that the property shall be suitable for residential use if the parties contemplate such use, absent contrary lease provisions.[3] Section 5.1 is immediately followed by this Caveat:

---

2. In Pawco supra, the court held that dependent-promises principles of contract law rather than the independent-covenants principles of property law, govern controversies over both residential and commercial leases. See Maust v. Frye, 39 Somerset L. J. 190, 203-204 (1981).

3. Section 5.1 provides as follows:

"§5.1 Condition Unsuitable on Date the Lease Is Made — Remedies Before Entry

"Except to the extent the parties to a lease validly agree otherwise, there is a breach of the landlord's obligations if the parties contemplate that the leased property will be used for residential purposes and on the date the lease is made and continuously thereafter until the date the tenant is entitled to possession, the leased property, without fault of the tenant, is not suitable for residential use. For that breach the tenant before entry may:

(1) terminate the lease in the manner prescribed in §10.1 and recover damages to the extent prescribed in §10.2; or

(2) affirm the lease and obtain equitable and legal relief including:

(a) the recovery of damages to the extent prescribed in §10.2;

"The Institute takes no position at this time as to whether the rule of this section is or should be available to the tenant of property leased for commercial or industrial purposes."

Comment b to §5.1 states (page 170):

"The rule of this section, because the statute and judicial decisions which support it relate to residential properties in most instances, is not at this time extended to commercial or industrial properties. No inference one way or the other is to be drawn from the failure to so extend the rule. Leases relating to commercial and industrial properties are usually made under circumtances of greater equality of bargaining power than in the case of residential properties and the considerations that affect decisions often differ in the two situations so far as the condition of the premises on the date the lease is made is concerned. Because of the paucity of authority and the differing considerations affecting commercial and industrial property, no position is taken at this time in regard to whether a commercial or industrial tenant is or should be entitled to the same rights in regard to the condition of the leased property on the date the lease is made as the residential tenant (see *caveat*)".

The reporter's note to §5.1 supra contains the following:

"The rule of this section is not extended to commercial leases. The failure to so extend it is not to be taken as any indication that it should or should not be so extended. The present state of the statutory

----

(b) an abatement of the rent to the extent prescribed in §11.1;

(c) the use of the rent to eliminate the unsuitable condition to the extent prescribed in §11.2;

(d) the withholding of the rent in the manner and to the extent prescribed in §11.3."

development and judicial development does not warrant taking a position one way or the other as to nonresidential property. In most cases, parties to a commercial lease are free to modify the rule by an arm's length agreement, and in most cases they do in practice. The Reporter is of the opinion that the rule of this section should be extended to nonresidential property. The small commercial tenant paticularly needs its protection. The modern authority is split on the applicability to commercial leases. Some of the cases applying the rule have involved commercial leases: Reste Realty Corp. v. Cooper, 53 N. J. 444, 251 A.2d 268, 33 A.L.R.3d 1341 (1969); Earl Millikin, Inc. v. Allen, 21 Wis.2d 497, 124 N.W. 2d 651 (1963). In Cameron v. Calhoun-Smith Dist. Co., 442 S.W.2d 815 (Tex.Civ. App. 1969), however, the court continued to apply the old common law rule to commercial leases. Also, most of the statutes apply to residential leases only (see Statutory Note at beginning of this Chapter)."[4] This writer's opinion is that the rule is and should be extended to commercial leases, even though the contract is not demonstrated to be adhesive.[5] The implied warranty meets the expectations of the parties in most commercial lease situations; thus, it is fairer to require that the parties negate rather than

---

4. The reporter was James A. Casner, Esq., Harvard University Law School.

5. "A contract of adhesion is one in which one dominant party specifies the terms and the other merely *adheres* to them because he lacks bargaining power to mold them to his wishes or needs." Miller v. Nationwide, 30 Somerset L. J. 44, 51, 70 D.&C.2d 338, 345 (1975). See also; Pugh v. Holmes, supra, 486 Pa. at 282-283; Pawco Inc. v. Bergman Knitting Mills, supra, 451. Even commercial leases are often adhesive. compare B & O Railroad Company v. Appalachian Fuels Inc., 40 Somerset L. J. 104 (1980), Appendix [2] and [8]c.

create the warranty in their contract. Besides, as indicated in the reporter's note supra, leases to small commercial tenants (which likely comprise the vast majority of commercial leases) are frequently adhesive. The fact that the Rent Withholding Act supra applies only to residential leases does not preclude extending the warranty to commercial leases, in accordance with the rationale used by the Supreme Court in Pugh v. Holmes supra.

In this case, however, the lease itself contains a warranty of habitability in paragraph 12 thereof which provides as follows:

"12. In the event of damage to the premises, rent shall abade [sic] wholly or proportionately as the case may be, during any period of untenability [sic]. In the event of damage to the premises by fire or other casualty or cause rendering the premises partially untenable [sic] lessor shall diligently restore the premises. In the event of damage by fire or other casualty or cause rendering the premises substantially untenable [sic] and requiring essentially a rebuilding of the destroyed premises, then within (60) days of receipt of notice of such casualty, lessor shall advise lessee whether lessor will restore or will terminate the lease with a proportionate abatement."

Whether that provision should be construed as a contraction of the implied-in-law warranty of habitability need not be decided here.[6]

---

6. Restatement §5.6 provides as follows:

"§5.6 Parties Agree Otherwise as to Landlord's Obligations in Regard to Condition of Leased Property

"The parties to a lease may agree to increase or decrease what would otherwise be the obligations of the landlord with respect to the condition of the leased property and may agree to expand or contract what would otherwise be the remedies available to the tenant for the breach of those obligations, and those agreements are valid and binding on the parties to the

Although there may be some problems of interpretation of paragraph 12 of the lease, defendant-petitioner's pleading and evidence appear sufficient to submit to a jury the defense of abatement of rental at least under the terms of the lease, and the judgment must, therefore, be opened. Whether there has been a constructive eviction, or whether any implied-in-law warranty of habitability is applicable to this commercial lease, is less clear, but we do not rule them out if the court should later find upon further development of the facts that either or both are viable theories. Defendant is entitled to the benefit of any legal theory which its pleading and evidence will support even though the theory is not articulated in the pleadings. Nevertheless, at pretrial conference there must be full disclosure of both evidentiary and legal contentions. Upstill v. Jamesway (No. 3), 32 Somerset L. J. 123 (1976); Local Rules Of Court, Chapter 43, Subchapter 1, Pretrial Conference (civil cases).[7]

## ORDER

Now, July 14, 1982, defendant's petition to open the judgment is granted. As provided in Civil Rule 2960, the issues to be tried are defined by the complaint in confession, the petition to open, and answer thereto, subject to the right of amendment under Civil Rule 1033. The case shall be placed on the next available and appropriate (see Civil Rule 2960) Trial List.

---

lease unless they are unenforceable in whole or in part because they are unconscionable or significantly against public policy."

7. On flooding as a constructive eviction, see Annotation in 33 ALR3d 1356.

The test of compliance with warranty is reasonableness, not perfection. Bodan v. Fickett, 33 Cumb. 20 (1982).