415 A.2d 31

**Carlo TEODORI and Mildred Teodori, Individually and Trading as Donaldson's Crossroads Co., a Partnership,**

v.

**William H. WERNER, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1980.
Decided May 30, 1980.

M. E. Kusturiss, John P. Liekar, Jr., Canonsburg, for appellant.

Milton D. Rosenberg, Rosenberg, Sewak & Pizzi, Charles L. Bell, Jr., Washington, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Tenant William Werner (appellant) seeks to open both a confessed money judgment and a confessed judgment of possession entered in favor of landlords Carlo and Mildred Teodori (appellees). Primarily at issue on this appeal is whether landlords' breach of the lease's "non-competition" clause provides tenant a defense to the landlord's actions for sums due and in ejectment. We are persuaded by our established caselaw, e. g., *McDanel v. Mack Realty Co.*, 315 Pa. 174, 172 A. 97 (1934), and modern authority, e. g., Restatement (Second) of Property, Landlord and Tenant (1977), that tenant has a valid defense.

I

Tenant leases a 1500 square foot retail storeroom in Donaldson's Crossroads Shopping Center where he operates his own retail jewelry business and gift shop. The parties' most recent written lease agreement, executed in June of 1973, provides for a five-year term of occupancy beginning August 1, 1973 and ending July 31, 1978. In the parties' "non-competition" clause, landlords agree not to "lease or operate as owner any space in the shopping center or any extension thereof primarily as a jewelry or gift shop."

In addition to a monthly base payment of $437.50, tenant annually is to pay to landlords five percent of the gross proceeds from jewelry sales and ten percent from gifts. Tenant also is to pay ten cents per square foot annually for maintenance of outside areas as well as increases in taxes owed by landlords and all charges for gas, water, sewer use, steam, electricity, light, heat or power, and telephone. Tenant is to render an annual "certified statement" showing the total gross proceeds of all business done upon the premises during the preceding year. Tenant also agrees, "on every default of payment of rent," or "on any and every breach of covenant or agreement," to "empower any attorney of any court of record" to appear for tenant and confess judgment

against him. By the terms of the instrument this power of confession extends to an action for the sum due and/or an action in ejectment.

On September 2, 1977, eleven months before expiration of the stated term of the lease, landlords instituted a proceeding against tenant for entry of judgments by confession, seeking both a "specific amount due" and ejectment. Landlords based their request for both judgments on averments that tenant owed them monthly base payments, maintenance charges and utilities, and increased taxes. Landlords additionally claimed that tenant failed to provide landlords with a timely certified statement of gross proceeds and failed to pay the percentage of proceeds owing. Acting pursuant to the warrant of attorney contained in the lease agreement, counsel appeared for tenant and confessed judgment in landlords' favor in the amount of $7,056.29.[1] Counsel also confessed judgment of possession. The prothonotary entered judgments the same day.

On September 15, 1977, less than two weeks after entry of the confessed judgments, tenant petitioned the Court of Common Pleas of Washington County to open both of the confessed judgments. As a defense, tenant alleged that landlords violated the parties' non-competition clause by leasing shopping center space to "Pennsylvania Wholesalers" for operation of a competing jewelry and gift shop business. Tenant also alleged that he did provide a certified statement of gross receipts and did pay the appropriate percentage.[2]

The same day the chancellor issued a rule on appellees to show cause why the confessed judgments should not be opened, "all proceedings to stay meanwhile." In landlords' answer, they claimed that as to the alleged breach of the non-competition clause tenant "has no legal ground to stop

1. The confessed money judgment of $7,056.29 includes a sum of $4,812.50 reflecting future rents for the eleven months remaining in the stated term of occupancy.

2. Accompanying tenant's petition to open is a petition to strike off the confessed money judgment on the ground that it improperly included the future rents. See supra note 1.

paying rent in the present case." As to the certified statement clause, landlord alleged that "regardless of the statement of the defendant, he did not file a certified statement and a simple showing of evidence will prove this." [3]

Landlords did not, however, seek a rule on tenant either to take depositions on the disputed factual issue concerning compliance with the certified statement clause or to order the case for argument. See Pa.R.Civ.Proc. 209. Instead, at the time they filed their answer, landlords requested the chancellor to set the matter for hearing. The chancellor granted landlords' request and scheduled a hearing. Landlords then filed an amended answer, setting forth the same claims contained in their original answer.

The matter then proceeded to argument, as requested by landlords. After argument, the chancellor dismissed tenant's petition to open.[4] Executions were stayed when tenant filed a bond of $7300. On tenant's appeal, the Superior Court affirmed. This Court granted allowance of appeal.

## II

■ At the outset we agree with tenant that landlords have admitted the factual allegations of tenant's petition to open. Rule 209 provides:

*"Duty of Petitioner to Proceed After Answer Filed*

If, after the filing and service of the answer, the moving party does not within fifteen days:

(a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or

(b) Order the cause for argument on petition and answer (in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule); the respon-

3. In their answer, landlords admitted that inclusion of the future rents is improper in view of their simultaneously-obtained judgment of possession.

4. The court also dismissed tenant's petition to strike off the confessed money judgment.

dent may take a rule as of course on the moving party to show cause why he should not proceed as above. If after hearing the rule shall be made absolute by the court, and the petitioner shall not proceed, as above provided, within fifteen days thereafter, the respondent may order the cause for argument on petition and answer, in which event all averments of fact responsive to the petition and properly pleaded in the answer shall be deemed admitted for the purpose of the rule."

Here, it is not tenant but landlords who requested the chancellor to set the matter for argument. Landlords did so upon filing their answer without first even attempting to obtain an appropriate rule on tenant as permitted under Rule 209. By so failing to avail themselves of the benefit of Rule 209, landlords have "follow[ed] the prior practice," Goodrich-Amram 2d § 209:2 at p. 126, under which "the ordering of the action for argument on petition and answer admitted for the purpose of the argument the truth of the answer or petition filed by the adverse party." Id. § 209:1 at p. 116. See e. g., *Harr v. Bernheimer*, 322 Pa. 412, 185 A. 857 (1936); *Rebic v. Gulf Refining Co.*, 122 Pa.Super. 149, 186 A. 236 (1936). Because landlords "[set] the case down without ruling the petitioner to proceed, [they admit] the averments of the petition." 2 Standard Pennsylvania Practice Ch. 9 § 46 p. 494 (1956). See *Roach v. Nilson*, 54 D.&C.2d 313 (Chester 1971); *Price v. Jordan*, 76 D.&C. 255 (Fulton 1951).

█ Because we accept as true tenant's factual allegations, the confessed judgments cannot stand on landlords' claim that tenant failed to comply with the parties' certified statements clause. Rather, the judgments can stand only if landlords are correct in their claim that, regardless of their compliance with the parties' non-competition clause, tenant owes an independent, continuing obligation throughout the term fully to pay them the stated rents. We agree, however, with tenant that landlords' view of tenant's obligation must be rejected.

Landlords' theory is unsupportable. It is true that "[a]t old common law the promises made by a landlord in a lease were independent obligations, so that the failure of the landlord to perform them did not give the tenant any right to disregard his obligations under the lease." Restatement (Second) of Property, Landlord and Tenant, supra, Introductory Note to Chapter 7. See generally I Friedman on Leases § 1.1 (1974). It is now clear, however, that this view of landlord-tenant relations, incorrectly resting more on notions of property law than on principles of contracts, has no place in modern jurisprudence. As long ago as 1934 this Court in *McDanel v. Mack Realty Co.*, supra, recognized the error of the independence-of-obligations approach as applied to a commercial lease transaction. At issue in *McDanel* was the scope of the commercial tenant's remedies where the commercial landlord defaulted on its covenant to heat the leased premises. In addition to the options of (1) performing "at his own expense" and deducting this cost from the rent due or (2) surrendering the premises "to relieve himself from any further payment of rent," the tenant

"(3) . . . can retain possession of the premises and deduct from the rent the difference between the rental value of the premises as it would have been if the lease had been fully complied with by the landlord and the rental value in the condition it actually was."

*McDanel*, 315 Pa. at 178, 172 A. at 98. See *Gorman v. Miller*, 27 Pa.Super. 62, 68 (1905). And "[t]he emerging judicial sentiment in regard to the landlord's obligation to provide leased property that meets health and safety standards repudiates the independence-of-obligations approach in leases in that area. . . ." Restatement (Second) of Property, Landlord and Tenant, supra. See *Pugh v. Holmes*, 486 Pa. 272, 405 A.2d 897 (1979); *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974); *Reitmeyer v. Sprecher*, 431 Pa. 284, 243 A.2d 395 (1968). See also *Albert M. Greenfield & Co. v. Kolea*, 475 Pa. 351, 380 A.2d 758 (1977) (tenant relieved of rental obligation where accidental fire destroys premises).

■ So too the independence-of-obligations approach must be rejected where the landlord's promise to perform "is a significant inducement to the making of the lease by the tenant." Restatement (Second) of Property, Landlord and Tenant, supra. It is obvious that a landlord's non-competition promise is critical to a commercial lease agreement like the one here. "The mere presence in a lease of a noncompetition promise by the landlord justifies the conclusion that it is essential that the promise be observed if the tenant is to conduct his business on the leased property profitably." Id. at § 7.2 Comment b, p. 254. See also Friedman, supra, at p. 7 (citing cases). It therefore must be concluded that absent a contrary agreement between the parties a tenant's obligations are not independent of a landlord's promise under a non-competition clause.

■ Here, in withholding the full prescribed payments, tenant acted well within his rights. Section 7.2 of the Restatement provides:

"Except to the extent the parties to a lease validly agree otherwise, the failure of the landlord to perform a promise contained in the lease that he, or someone holding under him, will not use other property in a manner that will compete with a business of the tenant, or of someone holding under the tenant, on the leased property, makes the landlord in default under the lease, if he does not cease, or cause to cease, the competing business within a reasonable time after being requested by the tenant to do so. For that default, the tenant may:

. . . . .

(2) continue the lease and, if the landlord's promise is valid, obtain appropriate equitable and legal relief including the various remedies prescribed in § 7.1(2)."

These parties have not agreed otherwise. There is no dispute that tenant seasonably requested landlords to cease their violation. Nor is there any dispute that landlords'

promise is valid.[5] The "various remedies prescribed" include under section 11.1 abatement of rent. See *McDanel v. Mack Realty Co.*, supra.[6] Both judgments therefore must be opened to permit tenant an opportunity to establish his defense.[7]

5. Indeed, this promise, reasonable both in duration and scope, can serve a proper function. As Commentary to the Restatement points out,

> "the use of a landlord's noncompetition promises is particularly significant in connection with the development of a shopping center designed to provide complete shopping services within a specific area. Using the space in the area for several businesses of the same type cuts down on the space available to provide different types of businesses, and makes it less likely that the shopping center complex will be able to attract the quality of businesses that may be essential to its financial success."

Restatement (Second) of Property, Landlord and Tenant, supra, § 7.2 at Comment d. See id. at Reporter's Note Item 2; *Hoffman v. Rittenhouse*, 413 Pa. 587, 198 A.2d 543 (1964); *Harris Calorific Co. v. Marra*, 345 Pa. 464, 29 A.2d 64 (1942); *Cleaver v. Lenhart*, 182 Pa. 285, 37 A. 811 (1897); Restatement (Second) of Contracts §§ 328–330 (Tent. Draft No. 12, 1977). "[P]arties are entitled to a degree of freedom in contracting to protect their own economic interests and . . . controlled development of a given business center may be desirable." Note, Restrictive Covenants in Shopping Center Leases, 34 N.Y.U.L.Rev. 940 (1959). See *Cragmere Holding Corp. v. Socony-Mobil Oil Co.*, 65 N.J.Super. 322, 167 A.2d 825 (1961).

6. Section 11.1 of Restatement (Second) of Property, Landlord and Tenant, provides:

> "If the tenant is entitled to an abatement of the rent, the rent is abated to the amount of that proportion of the rent which the fair rental value after the event giving the right to abate bears to the fair rental value before the event. Abatement is allowed until the default is eliminated or the lease terminates, whichever first occurs."

See also id. at § 7.2(1) (termination); id. at § 7.1(2)(a) (damages); id. at § 7.1(2)(c) (use rent to perform landlord's promise); id. at § 7.1(2)(d) (withhold rent). See generally III Friedman on Leases §§ 28.601–28.604 (1978). It appears that the remedy of abatement set forth in the Restatement is based at least in part on *McDanel*, supra. See Reporter's Note to § 11.1, Item 2. As the Reporter's Note points out, however, the Restatement's "proportional value" rule differs from *McDanel's* "loss of fair rental value" rule. See id.; id. at Item 4.

7. We note that landlords urge "that a commercial tenant in a shopping center cannot unilaterally make a decision that the landlord has breached the no-competition clause by leasing space to a third party." Brief for Appellees at 12. According to landlords, tenant's

## III

■ Tenant also claims that the confessed money judgment of $7,056.29 must not only be opened but must also be stricken off, in its entirety. According to tenant, the money judgment improperly includes $4,812.50 in future rents for the remainder of the stated term of occupancy even though landlords, by way of their confessed action in ejectment, simultaneously obtained judgment of immediate possession.[8] We see no reason, however, to strike the money judgment in its entirety on this ground alone. In their answer to tenant's petition to strike off,

"[landlords] . . . go on record as dropping the request for future rental payments and charges after the date of eviction of the defendants from the premises."

Record at 37a. See also id. at 34a; Brief for Appellees at 14. On remand, the money judgment should be modified accordingly. See *Cherelli v. Puleo*, 78 D.&C. 83 (Montg. 1951); *Household Finance Corp. v. MacMorris*, 32 Del.Co.Rep. 65 (1943).

Order of the Superior Court reversed and case remanded for proceedings consistent with this opinion.

relief lies in equity, not in a defense to proceedings instituted by landlords. We cannot agree. As Restatement (Second) points out,
"[f]requently the rent abatement will be accomplished in a judicial proceeding brought by the landlord to evict the tenant for the failure to pay the rent. In this proceeding, if the tenant is entitled to abate the rent, he is entitled to defend against eviction by establishing his right to abate the rent and paying to the landlord the amount of the abated rent as judicially determined in the proceedings."
Section 11.1 Comment b at p. 358. See also id. (recommending availability of declaratory relief); *McDanel v. Mack Realty Co.*, supra (abatement). Landlords also suggest that the "Rent Withholding Act," Act of January 24, 1966, P.L. (1965) 1534, § 1, as amended, 35 P.S. § 1700–1 (1977), which authorizes rent withholding where a local health department certifies a dwelling as unfit for human habitation, "preempts" judicial creation of any mode of non-equitable relief. We reject this contention out of hand. See *Pugh v. Holmes*, supra, 486 Pa. at 286–287, 405 A.2d at 904–905.

8. See supra notes 1–4.