J-A23039-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| ALLURE HAIR DESIGNS AND MINI SPA, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPELLEES | |
| v. | |
| JOHN S. GEORGE, JR. AND JAAM REAL ESTATE HOLDINGS, LLC, | |
| APPELLANTS | No. 588 WDA 2018 |

Appeal from the Order April 18, 2018
In the Court of Common Pleas of Allegheny  County
Civil Division at No: GD16-005896

---------------------------------------------------------------------------------

| ALLURE HAIR DESIGNS AND MINI SPA, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPELLANTS | |
| v. | |
| JOHN S. GEORGE, JR. AND JAAM REAL ESTATE HOLDINGS, LLC, | |
| APPELLEES | |
| | No. 629 WDA 2018 |

Appeal from the Order Entered April 18, 2018
In the Court of Common Pleas of Allegheny  County
Civil Division at No: GD16-005896

BEFORE:  BOWES, SHOGAN, and STABILE, J.

MEMORANDUM BY STABILE, J.:                    FILED JANUARY 21, 2021

These consolidated appeals arise from an action by a hair salon, Allure Hair Designs and Mini Spa, Inc. ("Tenant"), against its landlord, John S. George, Jr. ("George"), and a limited liability company owned by George, Jaam Real Estate Holdings, LLC ("Jaam"),[1] for breach of a commercial lease and fraud. Tenant alleged that Landlord breached a noncompetition covenant[2] in the lease by renting space to a competing hair salon on property approximately fifty yards away from Tenant's premises. The trial court, sitting without a jury, entered a decision in favor of Tenant in the amount of $20,392.40 on its claim against Landlord for breach of the lease. The court ruled in favor of Landlord on Tenant's claim for fraud. We affirm in part, reverse in part and remand for further proceedings.

The record reflects that on August 6, 2004, George leased Tenant 1,309 square feet within a shopping center located at 171 Wexford-Bayne Road in Wexford, Pennsylvania ("Tenant's building"). Specifically, Tenant leased

> those certain premises designated on the attached Exhibit "A" as Tenant Suite No. 1 containing one thousand three hundred nine (1,309) square feet ("Leased Square Feet") of space (hereinafter the "Premises"), within a commercial building located at 171 Wexford-Bayne Road (hereinafter referred to as "Building") in Wexford, Pennsylvania. The premises represent 21.4[%] of the total occupiable square footage of the Building.

---

[1] We will refer to George and Jaam collectively as "Landlord."

[2] Pennsylvania courts frequently refer to noncompetition covenants as "restrictive covenants." See, e.g., Pocono Summit Realty, LLC v. Ahmad Amer, LLC, 52 A.3d 261, 269-71 (Pa. Super. 2012). We will use the term "noncompetition covenant" in this memorandum.

Lease, 8/6/04, at 1. The lease included the following noncompetition covenant:

> Lessor shall not lease, rent or permit any tenant or occupant of the Premises, other than the lessee, to conduct any activity on the premises which consists of skin care, pedicure, manicure, or hair design/styling services.

Lease, § 33. The lease also included the following provision entitled "Common Areas":

> Landlord agrees to cause to be provided, operated, managed and maintained during the term of this Lease, certain common areas in or adjacent to the Building including parking areas, sidewalks, steps and/or other walkways. The manner in which such areas and facilities shall be maintained and operated and the expenditures therefore shall be at the sole discretion of the Landlord, and the use of such areas and facilities shall be subject to such reasonable regulations as Landlord shall make from time to time.
>
> Landlord hereby grants to Tenant, its employees, agents, customers and invitees, the nonexclusive right to use the parking and other common areas as from time to time constituted, such use to be in common with Landlord, Landlord's licensees and all other tenants and occupants of the building, its and their employees, agents, customers and invitees, except when the common areas are being repaired, altered or constructed. The Landlord will maintain said[] common areas in conjunction with the reasonable business operations of the Tenant and make efforts to maintain said common areas in a commercially reasonable manner . . . .
>
> Each calendar year quarter, Tenant will pay a pro-rata portion of any common area expenses related to cleaning, lighting, snow removal, landscaping, grass and tree cutting or trimming, and striping of parking spaces. Tenant's payment of such expenses will be calculated based on the percentage that the Premises represent of the total occupied square footage of the Building.

Id. at § 6.

The lease was for a five-year term expiring on October 31, 2009, and it gave Tenant options to renew the lease for additional five-year periods after expiration of the initial term. Tenant declined to exercise its options to renew, electing instead to enter one-year lease extensions for each of the seven years following the initial term. There is no evidence that the parties amended the terms of the lease.

In 2010, Jaam acquired property at 181 Wexford-Bayne Road, adjacent to Tenant's building. Jaam constructed a building at 181 Wexford-Bayne Road approximately fifty yards from Tenant's building ("the Adjacent Building"). Trial Transcript, at 32, 238. The two buildings are virtually identical in appearance, id., and share the same parking lot and curb cut. Id. at 32, 37. In February 2015, Landlord consolidated the 171 and 181 Wexford-Bayne Road properties into a single tax parcel. Id. at 237-38.

On September 21, 2015, Tenant and George executed a one-year extension for Tenant's salon covering the period November 1, 2015 through October 31, 2016. Prior to this extension, Tenant's owners confronted George about rumors of a new salon locating to the Adjacent Building. George denied entering into a lease with a competing salon but omitted the fact that he was negotiating with another salon, Eleven Eleven Pennsylvania, LLC, d/b/a Sola Salon Studios ("Sola"). Tenant's owner, Tami McClearly, testified that she did not believe George's denial. Id. at 44-45.

On November 10, 2015, Jaam entered into a ten-year lease with Sola for space within the Adjacent Building. Sola made substantial tenant improvements totaling $663,000.00 in the Adjacent Building and is paying annual rent of $135,450.00 to Jaam.

Prior to Sola's lease, Tenant paid common area expenses for 21.4% of its own building based on the formula in Tenant's lease (the percentage that the Premises represent of the total occupied square footage of Tenant's building). Id. at 117. After Sola's lease began, George billed Tenant for 7.21% of common area expenses for both buildings, including lighting, lawn maintenance, snow removal, garbage pickup, window cleaning and pest control. Id. at 36-37, 117, 238-40. Despite the drop in percentage, the common area charges increased, and Tenant paid the increased charges. Id. at 117-18. George admitted that he billed Tenant common area expenses for "both 171 and 181," that is, both Tenant's building and the Adjacent Building. Id. at 238-39.

In early 2016, when eight months remained on the lease, Tenant learned of the lease with Sola and asked to be released from its own lease in order to rent other space in the area. George refused.

On April 5, 2016, Tenant filed a complaint against Landlord alleging breach of contract, injunctive relief, and breach of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1—201-9.3. Several days later, Tenant filed a motion for emergency injunctive relief.

Landlord filed preliminary objections to the complaint and a response to the emergency motion for injunctive relief. On April 14, 2016, George notified Tenant that he was terminating the lease at the expiration of the current extension on October 31, 2016. He indicated he would consider negotiating a new lease with Tenant so long as it did not contain a noncompetition clause.

On May 2, 2016, following a hearing on Tenant's emergency motion, the court issued orders denying emergency injunctive relief and dismissing the counts in the complaint for injunctive relief and breach of the UTPCPL. The court permitted Tenant to pursue its claim for breach of contract. On January 5, 2017, Tenant amended its complaint to include a count for fraud.

In its contract claim, Tenant asserted that Landlord breached the noncompetition covenant in its lease by entering into a lease with Sola for space in the Adjacent Building. In its fraud claim, Tenant alleged that George fraudulently induced Tenant to renew its lease by failing to divulge that he was negotiating a lease with Sola.

On February 2, 2018, following a non-jury trial, the trial court entered a memorandum and order ruling in favor of Tenant on its breach of contract claim in the amount of $20,392.40, the final eight months of rent that Tenant paid following Landlord's breach. The court denied Tenant's claims for relocation costs and lost profits, and it did not award damages on Tenant's fraud claim despite observing that George "chose . . . to lie to [Tenant] about,

or at least conceal, the fact that he was leasing to another hair salon." Memorandum, 2/2/18, at 6.

Tenant filed post-trial motions in which it complained that the trial court failed to award various items of damage on the contract claim and failed to decide the fraud claim. Landlord filed post-trial motions seeking judgment n.o.v. on the breach of contract claim. The trial court denied all post-trial motions, and the parties cross-appealed to this Court. Tenant subsequently perfected all appeals by filing a praecipe for entry of judgment. On April 11, 2019, we remanded this matter to the trial court for preparation of a Pa.R.A.P. 1925(a) opinion. On May 1, 2019, without ordering the parties to file statements of matters complained of on appeal, the trial court filed an opinion explaining its decision.

Tenant raises the following issues in its appeal at 629 WDA 2018:

I. Whether the trial court erred in denying [Tenant]'s Motion for Post-Trial Relief?

II. Whether the trial court erred [] as a matter of law in denying the issues raised by [Tenant]'s Motion for Post-Trial Relief as follows:

> a. The Court did not issue a ruling on the claim of Fraudulent Misrepresentation, which was added by way of Amended Complaint on January 5, 2017, and properly before the Court, especially as the Court found "[Appellant] George also chose to either lie to [Tenant] about, or at least conceal, the fact that he was leasing to another hair salon."

> b. Additionally, the Court erred in failing to analyze the damages through Restatement Second of Property; Landlord & Tenant 7.2 as prescribed in Teodori v. Werner, 415 A.2d 31, 34 (Pa. 1980).

- 7 -

c. By failing to find that [Tenant], as tenant, had the first right of refusal under the lease and [was] therefore entitled to remain on the property indefinitely and that the Landlord's termination of the lease was impermissible under Section 2 of the Lease.

III. Whether the Court abused its discretion in ruling against the weight of the evidence in the following manners:

a. By failing to award lost profits to [Tenant] under either of the following two arguments: 1.) the employees left [Tenant] as a direct consequence of the Defendants' actions in leasing the property to a competitor; and/or 2.) [Tenant] was not able to fill open positions in a timely manner as a result of Defendant[s] leasing the property to a competitor, leading to significant lost profits.

b. By failing to rule in favor of the weight of the clear evidence that [Tenant] was unable to fill empty employment positions for over six months, thereby causing lost profits, as a direct result of the Defendants' action.

c. By failing to consider the lost profits as introduced into evidence at trial by Judy Campbell between the 2016 and 2015 tax returns in the amount of $60,919.00.

d. By failing to award moving and construction costs in light of evidence presented at trial in the amount of $40,960.20 and the Restatement Second of Property; Landlord & Tenant 10.2 in light of the evidence presented.

e. The Court's determination that text messages between [Tenant] and a prospective employee were inadmissible hearsay and not properly authenticated over [Tenant]'s objections that it was admissible evidence as provided under Commonwealth v. Mosley, 114 A.3d 1072 (Pa. Super. 2015); see also Commonwealth v. Koch, 106 A.3d 705 (Pa. 2014). Tamara McCleary was not permitted to testify as to her own text messages which she sent and received. This evidence would have further established [Tenant]'s inability to fill critical positions, i.e., further evidence of lost profits[,] as profits are generated by having stylists in the salon.

- 8 -

Tenant's Brief at 4-7.

Landlord raises the following issues in their cross-appeal at 588 WDA 2018:

I. Whether the court erred as a matter of law in finding that a lease in after-acquired property was a breach of the non-competition restrictions.

II. Whether Landlord [is] entitled to judgment as a matter of law since the trial court held the damages claimed were not proven or proximately caused by the actions complained of.

III. Whether the court erred as a matter of law by basing its decision [] on its belief that Landlord "made a poor business decision in holding [Tenant] to the remaining months of its lease" and therefore awarding rent abatement.

Landlord's Brief at 4. The issues raised in the briefs fall into four categories: whether the trial court (1) properly held Landlord liable to Tenant for breach of contract; (2) properly awarded the final eight months of rent to Tenant on its contract claim; (3) properly denied Tenant relocation costs and lost profits on its contract claim; and (4) properly denied Tenant's fraud claim.

We begin by addressing Landlord's argument that the trial court erred by ruling in Tenant's favor on its breach of contract claim. In effect, Landlord argues that the trial court erred by denying Landlord's post-trial motion for judgment n.o.v. on the contract claim.[3] An appellate court will reverse the

_____

[3] To preserve the right to request judgment n.o.v., a party ordinarily must first request a binding charge to the jury or move for a directed verdict or compulsory non-suit. Wag-Myr Woodlands Homeowners Association by Morgan v. Guiswite, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2019). A motion

- 9 -

trial court's decision to grant or deny judgment n.o.v. only when it finds an abuse of discretion or an error of law. Rost v. Ford Motor Co., 151 A.3d 1032, 1042 (Pa. 2016). In an appeal from the trial court's decision to deny judgment n.o.v., we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Drake Mfg. Co., Inc. v. Polyflow, Inc., 109 A.3d 250, 258 (Pa. Super. 2015).

The interpretation of any contract is a question of law. Currid v. Meeting House Restaurant Inc., 869 A.2d 516, 519 (Pa. Super. 2005). Our standard of review of such questions is de novo, and our scope of review is plenary. Smith v. Wells, 212 A.3d 554, 557 (Pa. Super. 2019).

"[A] lease is in the nature of a contract and is . . . controlled by principles of contract law." Gamesa Energy USA, LLC v. Ten Penn Center Associates, L.P., 217 A.3d 1227, 1238 (Pa. 2019). The fundamental rule in construing a contract is to ascertain and give effect to the intent of the contracting parties. Maisano v. Avery, 204 A.3d 515, 520 (Pa. Super. 2019).

_____

for a directed verdict is also appropriate in non-jury trials. Id. Landlord did not request a directed verdict on Tenant's contract claim orally or in writing at the close of evidence at trial, but they filed post-trial motions seeking judgment n.o.v. on the contract claim following the trial court's decision. The trial court did not find waiver and addressed Landlord's contract argument on the merits. Under these circumstances, we decline to find waiver. Id.; see also Capital Care Corp. v. Hunt, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where party failed to move for directed verdict, sought judgment n.o.v. in post-trial motion, and trial court addressed claim as presented in post-trial motion).

Landlord challenges the trial court's construction of the noncompetition covenant in Tenant's lease, which prohibits anyone other than Tenant from providing hair salon services on "the premises." Landlord contends that the definition of "premises" in the lease, "1,309 square feet of space within a commercial building at 171 Wexford-Bayne Road," limits the covenant's reach to the space leased to Tenant in 2004 and does not extend to the Adjacent Building. The trial court determined that Landlord's strict construction of the covenant would produce an absurd result, because it would have been meaningless for Tenant to negotiate a noncompetition covenant that only prevented competition in its own space. The court wrote:

> [I]n interpreting the non-competition clause in the Lease this Court must apply contract principles and give effect to the economic realities of shopping centers. The fact is [Landlord's] deliberate act of putting a competing hair salon in the shopping center would have the same adverse effect on [Tenant] regardless of whether the competitor was located in 171 Wexford-Bayne Road or 181 Wexford-Bayne Road [because] [t]he two buildings are located directly across a shared parking lot from each other. In following these basic principles, this Court believes the most logical and reasonable interpretation of the non-competition clause is to have it apply to the entire shopping center, which includes 171 and [181] Wexford-Bayne Road.

Memorandum at 5.

We agree with the trial court. Pennsylvania courts will not enforce the plain language of a contract when it would produce an absurd result. In United Refining Co. v. Jenkins, 189 A.2d 574 (Pa. 1963), Jenkins owed money to United and entered into a contract to sell United all the oil that he produced. The contested phrase in the oil contract stated that the contract

was to continue "so long as there remains any unpaid indebtedness" of Jenkins to United. Id. at 579. Jenkins defaulted on the loan but argued that the oil contract was still in force and that United had to buy his oil because he still owed money to United. United argued that the contested phrase in the oil contract should be interpreted to mean that the agreement would continue so long as Jenkins remained indebted to United and Jenkins had not defaulted in his obligations. Our Supreme Court accepted United's interpretation of the phrase, even though doing so required the Court to interpret a facially unambiguous phrase as meaning something different than what it appeared to mean on its face. The Court reasoned that

> if Jenkins' contention is correct, United was bound to continue purchasing all [of] Jenkins' oil . . . even though Jenkins failed to honor his obligation to United . . . . Such an interpretation of the language of this contract is both absurd and unreasonable. Under such an interpretation, Jenkins could take his profits from the "oil runs," dishonor his obligations to United and United would be bound indefinitely to the agreement.

Id. at 580. Jenkins demonstrates that if the plain meaning of a contract term would lead to an interpretation that is absurd and unreasonable, Pennsylvania courts should construe the contract otherwise in order to reach "the only sensible and reasonable interpretation" of the contract. Id.; see also Binswanger of Pennsylvania, Inc. v. TSG Real Estate LLC, 217 A.3d 256, 262 (Pa. 2019) ("before a court will interpret a provision in a statute or in a contract in such a way as to lead to an absurdity or make the statute or

contract ineffective to accomplish its purpose, it will endeavor to find an interpretation which will effectuate the reasonable result intended").

As in Jenkins, the result urged by Landlord would lead to an absurd result by limiting the noncompetition covenant to space rented by Tenant itself. No rational person in Tenant's position would accept such illusory protection in a commercial lease. Moreover, Landlord exploited this preposterous interpretation of the noncompetition covenant by (1) building the Adjacent Building mere yards from Tenant's building, a building identical in appearance to Tenant's building that shares the same parking lot and curb cut, (2) leasing space to Sola, a competing hair salon, in the Adjacent Building, (3) effectively operating the two buildings as a single integrated shopping center by combining the addresses into one tax parcel, and (4) charging Tenant for maintenance of the common areas in the Adjacent Building, thus forcing Tenant to subsidize Sola's business. The trial court correctly held that the noncompetition covenant covered the entire shopping center, that is, both Tenant's building and the Adjacent Building and all other land in the tax parcel. We hold that Landlord's conduct constitutes a breach of contract and affirm the trial court's decision holding Landlord[4] liable on Tenant's breach of contract claim.

_____

[4] The trial court held Appellant Jaam liable for breach of contract even though Jaam was not a signator on the lease. Appellants, however, did not seek relief

- 13 -

Next, we address the trial court's computation of damages on the contract claim. Tenant found out about the lease with Sola when eight months remained on Tenant's lease. Tenant asked to be released from its lease at that time, but George refused. The court determined that Tenant was entitled to an abatement of $20,392.40, the rent for the final eight months of the lease. Landlord argues that the award of all eight months' rent represented a windfall to Tenant, because Tenant enjoyed the use of the premises during the final eight months of the lease. We conclude that further proceedings are necessary on this issue.

In Teodori v. Werner, 415 A.2d 31 (Pa. 1980), our Supreme Court stated that when the landlord defaults on a promise, the tenant "can retain possession of the premises and deduct from the rent the difference between the rental value of the premises as it would have been if the lease had been fully complied with by the landlord and the rental value in the condition it actually was." Id. at 34 (citing McDanel v. Mack Realty Co., 172 A. 97 (Pa. 1934)). Teodori also recognized that a slightly different remedy is embodied within a chain of sections in the Restatement (Second) of Property. The first section, Section 7.2, states in relevant part:

> Except to the extent the parties to a lease validly agree otherwise, the failure of the landlord to perform a promise contained in the lease that he, or someone holding under him, will not use other

_____

for Jaam on this basis in the trial court or this Court. Accordingly, we decline to disturb the finding of liability against Jaam.

property in a manner that will compete with a business of the tenant, or of someone holding under the tenant, on the leased property, makes the landlord in default under the lease, if he does not cease, or cause to cease, the competing business within a reasonable time after being requested by the tenant to do so.  For that default, the tenant may:

(2) continue the lease and, if the landlord's promise is valid, obtain appropriate equitable and legal relief including the various remedies prescribed in [§] 7.1(2) [of the Restatement (Second)].

Teodori, 415 A.2d at 34 (reciting Section 7.2) (emphasis added).  Section 7.1(2), in turn, provides:

Except to the extent the parties to a lease validly agree otherwise, if the landlord fails to perform a valid promise contained in the lease to do, or to refrain from doing, something on the leased property or elsewhere, and as a consequence thereof, the tenant is deprived of a significant inducement to the making of the lease, and if the landlord does not perform his promise within a reasonable period of time after being requested to do so, the tenant may . . .

(2) continue the lease and obtain appropriate equitable and legal relief, including:

(a) the recovery of damages to the extent prescribed in § 10.2;
(b) an abatement of the rent to the extent prescribed in § 11.1;
(c) the use of the rent to perform the landlord's promise to the extent prescribed in § 11.2; and
(d) the withholding of the rent in the manner and to the extent prescribed in § 11.3 until the landlord performs his promise.

Id. (emphasis added).[5]  Finally, Section 11.1 provides:

If the tenant is entitled to an abatement of the rent, the rent is abated to the amount of that proportion of the rent which the fair

_____

[5] Teodori refers in passing to Section 7.1 without reciting its text.  We fill in this gap by reciting the relevant portion of Section 7.1.

rental value after the event giving the right to abate bears to the fair rental value before the event. Abatement is allowed until the default is eliminated or the lease terminates, whichever first occurs.

Teodori, 415 A.2d at 34-35 & n.6 (reciting Section 11.1). Teodori observed that "the Restatement's proportional value rule differs from McDanel's loss of fair rental value rule," but the Court did not instruct which rule to apply. Id.

Here, the trial court concluded that the entire eight months of rent was awardable under Section 11.1 of the Restatement (Second) of Property. This award likely is excessive. An award of all eight months of rent is tantamount to the conclusion that the leasehold premises had no value whatsoever. Common sense indicates, however, that the premises had some rental value during the final eight months of the lease, since Tenant remained in the leasehold premises during this time and continued to operate its business. Therefore, we vacate the judgment of $20,392.40 and remand to the trial court for a determination of the proper amount of rent abatement. When making this determination, the trial court shall explain whether it applied the Restatement's proportional value rule or McDanel's loss of fair rental value rule and the reason for its selection.

Next, we address Tenant's argument that the trial court erred by denying its claims for relocation costs and construction costs at the new premises. No relief is due. To recover damages for breach of contract, the plaintiff must prove that "(1) [the damages] were such as would naturally and

ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." Ferrer v. Trustees of University of Pennsylvania, 825 A.2d 591, 610 (Pa. 2002). Had Tenant been forced to vacate the premises before the end of the lease, relocation and construction costs might have been recoverable, because it is "foreseeable that a tenant whose lease is prematurely brought to an end will incur relocation expenses [such as] moving costs, expenses of obtaining a lease of other property, adapting the tenant's furnishings to a new location, and an increase in rental for a comparable new location." Restatement (Second) of Property, Landlord and Tenant, § 10.2, comment d. Here, however, Tenant remained in the leasehold premises until the end of the lease and moved out after deciding not to renew the lease. Landlord did not cause the relocation or construction costs; Tenant elected to incur them, like any other tenant who decides to leave at the end of the lease. Thus, Tenant was not liable for these costs.

We further conclude, based on our review of the record, that the trial court correctly rejected Tenant's claim for lost profits and lost goodwill. In particular, we agree with the trial court's conclusions that (1) Tenant failed to prove lost goodwill because it was unable to demonstrate what its goodwill was prior to George's breach or that it lost customers to Sola; (2) Tenant failed to prove lost profits due to alleged loss of employees, because the

testimony of Tenant's former employee, Amy Pusateri, demonstrates that several employees left out of desire to start their own salon, not because of any misconduct by Landlord; and (3) Tenant could not prove that Landlord's conduct left Tenant unable to hire new employees, because the evidence that Tenant attempted to introduce on this point was inadmissible hearsay (text messages from an individual who allegedly turned down Tenant's offer and joined Sola instead). Opinion, 5/1/19, at 11-13.

Finally, we hold that the trial court correctly rejected Tenant's fraud claim. An essential element of fraud is justifiable reliance by the plaintiff on a misrepresentation by the defendant. Bortz v. Noon, 729 A.2d 555, 560 (Pa. 1999). The evidence demonstrates that before Tenant entered into the 2015-16 lease extension, Tenant's owners met with George and inquired whether Jaam had signed a lease with a rival salon. George denied that there was a lease with any salon, but he concealed the fact from Tenant that Jaam was negotiating a lease with Sola. In early 2016, Tenant discovered that Jaam entered into a lease with Sola after Tenant entered the 2015-16 lease extension.

This evidence, construed in the light most favorable to the verdict winners on the fraud claim, i.e., Landlord, shows that Tenant did not rely on George's statement in making its decision to enter into the 2015-16 lease extension. To the contrary, Tenant did not fully trust George's word but decided to enter into the lease extension anyway. Absent evidence of any

reliance on George's word, let alone justifiable reliance, Tenant has failed to present sufficient evidence of fraud.

For the foregoing reasons, we affirm the trial court's decision on all issues except for the amount of rent abatement that Tenant should receive for Landlord's breach of the lease. On that issue, we remand for further proceedings in the manner specified above.

Judgment affirmed in part and reversed in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/21/2021